**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| MOTHER DOE #1, ET AL. | * |
| | * |
| Plaintiffs | |
| v. | * |
| BOARD OF EDUCATION | * |
| SOMERSET COUNTY, ET AL. | |
| | *  Civil Action No.: 1:22-cv-01491-CCB |
| Defendants | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS TO DISMISS COMPLAINT**

Defendant Board of Education of Somerset County (the "Board"), by its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss (the "Motion") filed in the captioned action. As discussed below, the Board respectfully requests that this Court grant its Motion, which is incorporated by reference, and dismiss the Complaint against it in its entirety, with prejudice, for failure to state a claim upon which relief may be granted.

I.  **OVERVIEW.**

This suit arises out of the criminal actions of discharged school nurse Samantha Williams Marsh ("Defendant Marsh") who was previously employed by the Board. While Plaintiffs seek to impose liability on the Board for acts of alleged sexual abuse solely perpetrated by Defendant Marsh, the Board cannot be held liable for the intentional and malicious conduct of Defendant Marsh as a matter of law. Furthermore, Plaintiffs' failure to plead any factual allegations which raise a claim of relief against the Board above the speculative level warrants dismissal of the Complaint against the Board.

On February 11, 2022, Mother Doe #1, Father Doe #1, Student Doe #1, Mother Doe #2, Father Doe #2, Student Doe #2, Mother Doe #3, Father Doe #3, and Student Doe #3 (collectively, the "Plaintiffs") filed a nineteen-count complaint ("the Complaint") against the Board and Defendant Marsh (collectively, the "Defendants") in the Circuit Court for Somerset County in which they broadly asserted the Board's knowledge of grooming behaviors by Defendant Marsh and "did nothing to increase Defendant Marsh's training or supervision to eliminate" them. ECF 2, ¶ 34.[1] Namely, Plaintiffs contend that Defendant Marsh groomed three African American male underage athletes for sexual activity, enticing them with candy, snacks, social media, and lewd text messages. *See id.*, ¶¶ 27-33. Plaintiffs further allege that the Board "either witnessed these red flags themselves or received complaints from personnel at the school and concerned parents . . . but failed to take any action." *Id.* at ¶¶ 35-36. Besides such vague and conclusory allegations, Plaintiffs come forward with no specific factual allegations that any acts or failures to act on the part of the Board caused Plaintiffs harm or that the Board is somehow responsible for the reprehensible conduct of Defendant Marsh. As argued below, each of Plaintiffs' claims against the Board must fail, and the Complaint against the Board is subject to dismissal.

Sixteen of the nineteen counts involve claims against the Board. Of those sixteen, Counts I, II, and IX sound in negligence; Counts V, XII, and XIII sound in other common law tort; Counts VII, VIII, and XI involve the Maryland Constitution; Counts XIV and XV involve Title VI and Title IX, respectively; and Counts XVI, XVII, XVIII, and XIX involve federal civil rights laws. Examination of these counts readily reveals Plaintiffs' desire to conflate the actions of Defendant Marsh with those of the Board. Plaintiffs fail, however, to allege legally sufficient facts that impute the Board for Defendant Marsh's reprehensible conduct. As discussed in detail below, while

---

[1] This case was removed to this Honorable Court on June 17, 2022. *See* ECF 1.

Plaintiffs seek to hold the Board liable for the independent, criminal actions of Defendant Marsh, such conduct cannot be imputed to the Board. Accordingly, the Complaint against the Board is subject to dismissal in its entirety, with prejudice.

## II.    STANDARD OF REVIEW.

A reviewing court may properly dismiss a complaint if the complaint fails to set forth any claims upon which relief can be granted and because the plaintiffs can prove no set of facts that would entitle them to any recovery as a matter of law. *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A properly pled complaint must state material facts with sufficient specificity. *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989). Conclusory statements by a plaintiff will not suffice. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). A claim must relate facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 n.3. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

While the court must assume that factual allegations in the Complaint are true, it need not assume that a plaintiff "can prove facts that [are] not alleged or that the defendants have violated the . . . law [ ] in ways that have not been alleged." *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (quoting *Associated Gen. Contractors v. California Sate Council of Carpenters*, 459 U.S. 519, 526 (1983)). Additionally, when the face of the Complaint clearly shows that the plaintiff is not entitled to relief, dismissal is justified. *Thomas W. Garland,*

*Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979), *cert. denied*, 444 U.S. (1979). The purpose of a motion to dismiss is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive dismissal, a complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint, then, is subject to dismissal if it does not allege "enough facts to state a claim of relief that is plausible on its face." *Id*. at 570. Thus, to survive dismissal under Rule 12(b)(6), the legal framework of the complaint must be supported by factual allegations by the plaintiff which "raise a right to relief above the speculative level." *Id*.

## III.   ARGUMENT.

### A.   PLAINTIFFS' NEGLIGENCE CLAIMS (COUNTS I, II, AND IX).

#### 1.   The Board Cannot Be Held Vicariously Liable for the Intentional Torts of Defendant Marsh.

Count I of the Complaint seeks recovery against the Board for negligence on the theory that the Defendants "ha[d] a special relationship with the students" and owed them the same duty of care as that of a parent. *See* ECF 2, ¶ 53. Plaintiffs further allege that the Board had a duty to prevent interactions between students and "an individual who posed an unreasonable risk of harm," and a statutory duty under Md. Code Ann. §5-704 (mandatory reporting of child abuse). *See id.* Plaintiffs' negligence claim against the Board fails because it seeks to hold the Board vicariously liable for sexual abuse committed by Defendant Marsh. As a matter of Maryland law, however, neither a board of education nor its administrative employees can be held vicariously liable for the alleged intentional torts, acts of malice, and gross negligence perpetrated by its employees or former employees because such conduct is outside the scope of employment. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-518(e) ("A county board employee acting within the scope of employment,

4

without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability."). Indeed, the Board is *only* responsible for the torts of its employees that are committed within the scope of their employment. Md. Code Ann., Cts. & Jud. Pro. § 5-518(d)(1).

It is well-settled Maryland law that when a Board employee commits an intentional wrong against a student or acts with malice or gross negligence, such act can never be viewed as an act within the scope of employment for vicarious liability purposes. On this point, the Court of Appeals of Maryland opined as follows in *Hunter v. Board of Education of Montgomery County*, 292 Md. 481, 491 n. 8 (1982):

> Where, as here, it is alleged that the individual educators have willfully and maliciously acted to injure a student enrolled in a public school, *such actions can never be considered to have been done in furtherance of the beneficent purposes of the education system*. Since such intentional torts constitute an abandonment of employment, the Board is absolved of liability for these purported acts of its individual employees.

*Id.* (emphasis added).

The Court of Special Appeals expressed similar reasoning in *Tall v. Board of School Commissioners of Baltimore City*, 120 Md. App. 236, 252-55 (1998), where it held that the Baltimore City Board of School Commissioners could not be held vicariously liable for a teacher's assault, battery, and intentional infliction of emotional distress on a special needs student for whom the teacher was responsible, stating:

> In analyzing the scope of employment issue in the educational context, *Hunter v. Board of Education of Montgomery County*, 292 Md. 481, 439 A.2d 582 (1982), is instructive. There, the Court observed that a school board "can only be held liable for the intentional torts of its employees committed while acting within the scope of their employment." *Id.* at 491 n. 8, 439 A.2d 582. In dicta, the Court also said:
>
>> Where, as here, it is alleged that the individual educators have willfully and maliciously acted to injure a student enrolled in a

public school, such actions can never be considered to have been done in furtherance of the beneficent purposes of the educational system. Since such alleged intentional torts constitute an abandonment of employment, the Board is absolved of liability for these purported acts of its individual employees.

120 Md. App. at 254 (emphasis added).

Similarly, in *Savoy v. Charles Cty. Pub. Sch.*, No. CIV.A. AW-09-788, 2010 WL 481345, at *5 (D. Md. Feb. 5, 2010), the U.S. District Court for the District of Maryland dismissed negligence and intentional tort claims, among others, asserted against the Charles County Board of Education which stemmed from the alleged battery of a student by two teachers at an alternative school. Relying on *Tall*, the court agreed with the Board that "as a matter of law it cannot be liable for the intentional torts of its employees under a *respondeat superior* theory of liability." *Id*. In light of the allegations of battery by the teachers asserted, the *Savoy* court found that, "Plaintiffs have not alleged sufficient evidence to show that these acts occurred within the scope of employment, and Defendant CCPS has made a strong showing that they did not." *Id*. Of particular importance in *Savoy* was that Maryland law "clearly bans" the conduct at issue. *Id*. The court also took note that, "Plaintiffs themselves have characterized the Defendants' behavior as 'willful and wanton.'" *Id*. After expressly adopting the reasoning of Court of Special Appeals in *Tall* discussed above, the U.S. District Court explained:

Similarly, it is difficult to imagine what pedagogical purpose was served by the hitting, knocking down, and dragging of the student into a separate room to beat him. Additionally, Plaintiff had to seek medical treatment for the injuries, which courts have found weighs in favor of a finding that the injury occurred outside the scope of a school system employee's scope of employment. The Court finds that the acts of battery in this case constituted intentional torts that fell outside the scope of employment, and accordingly the Court will dismiss these claims as to CCPS.

*Id.*[2]

---

[2] In dismissing the negligence claim against the individual defendants on the basis of Section 5-518(e), the court reasoned that "[b]y definition, a showing of negligence cannot include malice or gross negligence." *Id*. at *7.

Needless to say, no employee of any board of education in the State of Maryland acts within the scope of employment when sexually abusing a minor student, as Plaintiffs allege here. As the Court of Special Appeals reasoned in *Matta v. Board of Education of Prince George's County*, 78 Md. App. 264, 274 (1989), it is not "even potentially possible for any court or reasonable jury to conclude that teachers are 'authorized' to sexually abuse or harass their students."

The sound reasoning expressed above by the Court of Special Appeals in *Tall* and *Matta*, as well as that expressed by the Court of Appeals in *Hunter* clearly delineates a prohibition against vicarious liability in this State for claims made against boards of education for the abusive conduct of their employees. A board of education is never liable for an employee's intentional torts since such torts "constitute an abandonment of employment" and, thus, as a matter of law, are incapable of being carried out as part of the employee's service to a Maryland public school system. *See Hunter*, 481 Md. at 491 n. 8. Such claims asserted against the Board in the instant case should be dismissed accordingly.

### 2. A Negligence *Per Se* Claim is not Cognizable in Maryland.

To the extent Count I asserts a claim for negligence *per* se, such claim also fails because under Maryland law, a violation of a statute is not negligence *per se* but merely amounts to *prima facie* evidence of negligence. *See, e.g., Absolon v. Dollahite,* 376 Md. 547, 554 (2003) ("Mandatory language in the statute is not sufficient to abrogate the rule that a violation of a statutory duty is merely evidence of negligence, and not negligence *per se*."); *Kiriakos v. Phillips,* 448 Md. 440, 457 (2016) ("The Statute or Ordinance Rule is not a means to establishing negligence per se but only *prima facie* evidence of negligence."); *Polakoff v. Turner*, 385 Md. 467, 478 (2005) (stating that "proof of a statutory violation, plaintiff's membership in the class of people designed to be protected by the statute, and causation, amount to *prima*

*facie* evidence of negligence, not negligence *per se"*); *cf.* W. Page Keeton et al., Prosser and

Keeton on Torts § 36, at 230 (5th ed. 1984) ("A large number of courts have held that a violation

is only evidence of negligence, or *prima facie* evidence thereof, which may be accepted or rejected

according to all of the evidence."). Thus, "there is no cause of action for negligence *per se* under

Maryland law, and to the extent [Plaintiffs] allege[] one, it [should be] dismissed." *Bray v. Marriott

Int'l*, 158 F. Supp. 3d 441, 444–45 (D. Md. 2016); *see Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App.

305, 329 (2007). Count I should be dismissed for this additional reason.

### 3. Md. Code Ann., Fam. Law § 5-704 Cannot Form the Basis of a *Prima Facie* Negligence Claim.

Alternatively, a violation of Md. Code Ann., Fam. Law § 5-704 cannot form the basis of a

*prima facie* negligence claim against the Board. "To establish a *prima facie* case of negligence

based on a statutory violation, the plaintiff must show that (1) the statute or ordinance is designed

to protect a specific class of persons which includes the plaintiff; (2) the violation of the statute

proximately caused the injury to the plaintiff; and (3) the harm suffered is of the kind that the

statute was intended to prevent." *M.R. by & Through N.R. v. Tajdar*, No. CV TDC-17-3836, 2018

WL 6050888, at *6 (D. Md. Nov. 19, 2018).

The first element "has generally limited application of this principle to the violation of

statutes related to public safety or health related issues." *Estate of Saylor v. Regal Cinemas, Inc.*,

54 F. Supp. 3d 409, 430 (D. Md. 2014) (collecting cases); *see also Tajdar*, 2018 WL 6050888, at

*7 ("A claim based on a violation of a statute or regulation designed to protect an individual from

physical harm falls squarely within the range of negligence claims."); *see, e.g. Brooks v. Lewin

Realty III, Inc.,* 378 Md. 70 (2003) (violation of Baltimore City Housing Code as evidence of

negligence in lead paint poisoning case); *Wietzke v. Chesapeake Conference Ass'n,* 421 Md. 355

(2011) (violation of county code regulating "land-disturbing activity" as evidence of negligence

in claim arising from the flooding of a basement); *Pahanish v. W. Trails, Inc.*, 69 Md. App. 342, 362 (1986) (horse stable's failure to comply with state licensing and inspection regulations as evidence of negligence in claim arising from a fall from a horse); *Hammond v. Robins,* 60 Md. App. 430, 431 (1984) (violation of county animal control ordinance as evidence of negligence where unleashed dog caused bicycle accident); *Flaccomio v. Eysink,* 129 Md. 367 (1916) (violation of food and drug safety statute could provide evidence of negligence in adulterated beverage claim).

In *Horridge v. St. Mary's Cty. Dep't of Soc. Servs.*, 382 Md. 170 (2004), the Court of Appeals of Maryland held that the statutory obligation under Md. Code Ann., Family Law § 5-706 for the Department of Social Services ("DSS") to conduct a thorough investigation of reported child abuse and to take appropriate steps to protect the child creates a civil duty on the part of the DSS to the child who is the subject of the report. In so holding, the court reasoned:

> The duties imposed on DSS by FL § 5–706 and the implementing regulations of the Department of Human Resources are far more specific and focused. They require a prompt investigation of *each* reported incident of child abuse. The duty to act is mandatory; the steps to be taken are clearly delineated; and, most important, the statute makes clear in several places that the sole and specific objective of the requirement is the protection of a specific class of children—those identified in or identifiable from specific reports made to DSS and those also found in the home or in the care or custody of the alleged abuser. This is not an obligation that runs to everyone in general and no one in particular. It runs to an identified or identifiable child or discrete group of children.

*Id*. at 189-90.[3]  Nowhere in *Horridge* did the court indicate any intention to impose similar duties on the reporting individuals subject to Section 5-704,[4] the provision relied on by the instant Plaintiffs.

Importantly, the reporting obligation imposed by Section 5-704 is one that is attributable to individual educators and other listed professionals but does not apply directly to an education institution such as the Board.  Unlike the civil duty imposed by 5-706, the violation of which could give rise to a negligence claim against DSS as explained in *Horridge*, the General Assembly has already expressly provided the mechanism for redressing an individual educator's failure to report suspected child abuse or neglect under Section 5-704.  Specifically, Section 5-705.4 provides:

> If an agency participating in an investigation under § 5-706 of this subtitle has substantial grounds to believe that a person has knowingly failed to report suspected abuse or neglect as required by § 5-704 of this subtitle, the agency shall:
>
> (1) file a complaint with the appropriate licensing board in accordance with the provisions of the Health Occupations Article if the person is a health practitioner;
>
> (2) file a complaint with the appropriate law enforcement agency if the person is a police officer; or
>
> (3) file a complaint with the county board of education or the appropriate agency, institution, or licensed facility at which the person is employed if the person is an educator or a human service worker.

---

[3] Three years later, the court in *Pendleton v. State*, 398 Md. 447, 469 (2007) analyzed *Horridge* and held that Section 5-706 and the "corresponding COMAR sections . . . imposed a duty on DSS" and that "as a result of Section 5-706, 'DSS is given not just a specific duty to act in response to such a report but ample and detailed authority to do so.'" (citing *Horridge*, 382 Md. at 192).  Once more, the specific duty to act delineated in Section 5-706 extends to DSS, not further.

[4] Section 5-704 provides, in relevant part: that "each . . . educator . . .  acting in a professional capacity in this State: (1) who has reason to believe that a child has been subjected to abuse or neglect, shall notify the local department or the appropriate law enforcement agency; and (2) if acting as a staff member of a . . . school. . . shall immediately notify and give all information required by this section to the head of the institution or the designee of the head." Md. Code Ann., Fam. Law § 5-704(a).

Md. Code Ann., Fam. Law § 5-705.4.

Furthermore, an educator's knowing failure to report child abuse is grounds for termination under Md. Code Ann., Educ. § 6-202(a)(1)(ii). As such, the failure to report is *per se* outside the scope of employment and, thus, not attributable to the Board. Moreover, since sections 5-704 and 5-705.4 govern the relationship between the reporter and the reporter's employer (here, the Board) rather than that of the alleged victim and reporter, they cannot serve as evidence of a negligence claim. For these additional reasons, Count I is subject to dismissal.

### B. PLAINTIFFS' NEGLIGENT TRAINING AND SUPERVISION CLAIMS FAIL.

#### 1. Count II Sounds in Educational Negligence Which is Not Cognizable Under Maryland Law.

Count II of the Complaint seeks recovery against the Board on the theory that it was negligent in its alleged duty to adequately train Defendant Marsh and adequately supervise Defendant Marsh and Plaintiffs. *See* ECF 2, ¶ 63. Examination of Count II reveals Plaintiffs' attempt to assert an educational negligence claim couched in terms of negligent supervision. Since Maryland courts do not recognize claims of educational negligence, Count II is subject to dismissal.

The Court of Appeals of Maryland expressly rejected the tort of educational negligence in *Hunter,* 292 Md. at 484. There, the court rejected claims brought by parents against a school board for allegedly failing to appropriately assess a student which, the parents alleged, resulted in the student's inappropriate placement and "generally caused the student to feel 'embarrassment,' to develop 'learning deficiencies,' and to experience 'depletion of ego strength.'" Rejecting the theory that a school system or individual educators can be held liable for educational negligence or malpractice, the Court recognized that such a tort "would in effect position the courts of this State as overseers of both the day-to-day operation of our educational process as well as the

formulation of its governing policies." *Id.* at 487-88.   The Court further reasoned, as a matter of public policy, that "[t]his responsibility we are loathe to impose on our courts." *Id.* at 488-89.

In subsequent cases, Maryland appellate courts, the United States District Court for the District of Maryland, and courts across the country have relied upon the reasoning expressed in *Hunter* and have applied that reasoning in rejecting a variety of educational negligence claims including those seeking recovery for alleged negligent training and supervision.  For example, in *Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md. App. 261, 293 (2018), the Court of Special Appeals affirmed under *Hunter* the entry of summary judgment rejecting multiple tort and contract claims, including claims alleging the negligent hiring and supervision of two instructors, asserted by a physician who had been dismissed from her residency.  Although the appellant in *Gurbani* argued in favor of a narrow interpretation of *Hunter*, the Court rejected those arguments in favor of broad judicial deference to educational decision making,[5] and rejected the claims of negligent hiring and supervision with reasoning that is directly applicable to this case:

> After devoting most of her arguments to her contract-based claims, Dr. Gurbani also argues that *Hunter*'s "educational negligence framework" should not bar her claims against the University for the negligent retention and supervision of its educators. The gist of that claim is her assertion that the University breached a duty of care by "not taking action to ensure that Dr. Osgood and Dr. Hasenboehler were acting in a timely professional manner" and by "permitt[ing] them to file after-the-fact evaluations[.]"
>
> This count for negligent retention and supervision "clearly sounds in negligence." *Gasper v. Ruffin Hotel Corp. of Maryland, Inc.*, 183 Md. App. 211, 231, 960 A.2d 1228 (2008), *aff'd*, 418 Md. 594, 17 A.3d 676 (2011). Indeed, one count of the Hunters' complaint had alleged that the board of education was "negligent in evaluating its personnel and programs." *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 47 Md. App. 709, 710 n.3, 425 A.2d 681 (1981), *aff'd in part, rev'd in part*, 292 Md. 481, 439 A.2d 582 (1982). The Court of Appeals upheld the dismissal of

---

[5] The Court specifically rejected the argument that the decision in *Hunter* should be limited to the facts of that case:

> "Even as Dr. Gurbani encourages this Court to confine *Hunter* to its own factual context, she appears to recognize that *Hunter* is only a single example of a broader body of case law that overwhelmingly favors judicial deference to academic decisions at all levels of education."  237 Md. App. at 293.

that count, observing that it "expressly state[d] [a] negligence claim[ ]" regarding the educational process. *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 292 Md. at 489 & n.5, 439 A.2d 582; *see also James v. Frederick Cnty. Pub. Schs.*, 441 F.Supp.2d 755, 759 (D. Md. 2006) (concluding that, under *Hunter*, Maryland does not recognize a claim against a board of education for "negligent hiring" of allegedly incompetent staff). So too, we must reject Dr. Gurbani's claim that the University should have intervened in the teaching of Dr. Osgood and Dr. Hasenboehler. Recognition of her claim would improperly require a court to import "tort principles," which are "difficult, if not impossible to apply in the academic environment[.]" *Gupta v. New Britain Gen. Hosp.*, 687 A.2d at 119.

237 Md. App. at 306-307.

Similarly, in *James v. Frederick County Public Schools,* 441 F. Supp.2d 755, 759 (D. Md. 2006), the United States District Court for the District of Maryland rejected under *Hunter* claims of negligence and negligent hiring brought by the parent of an eight-year-old special needs student who allegedly suffered injuries after being subjected to excessive force by a police officer following the student's reported outbursts.  In dismissing the claims against the Board of Education of Frederick County, the Court reasoned as follows:

> With respect to the negligence and negligent hiring claims, the Maryland Court of Appeals more than two decades ago held that it would not recognize such claims primarily because of the difficulty in fashioning a legal standard of care and the immeasurability of damages, but also because it did not want to make courts the "overseers of both the day-to-day operation of our educational process as well as the formulation of its governing policies." *Hunter v. Bd. of Educ. of Montgomery County,* 292 Md. 481, 439 A.2d 582, 585 (1982); *see also Tabor v. Baltimore City Public Sch.,* 138 Md. App. 747, 773 A.2d 628, 630 (2001) ("Maryland does not recognize a tort action seeking damages based on negligent education.") (citing *Hunter* ).

441 F. Supp.2d at 759.[6]

---

[6] *Accord N.T. v. Balt. City Bd. of Sch. Comm'rs*, No. CIV. JKB-11-356, 2011 WL 3747751, at *1 (D. Md. Aug. 23, 2011) (rejecting educational negligence claim under the following reasoning:  "Plaintiffs attempt to distinguish *Hunter* on the basis that it only involved a claim by Hunter's parents that the local school system had negligently evaluated his learning abilities in contrast to Plaintiffs' allegations in the instant case that N.T. was wrongly arrested, suspended, and removed to alternative placements. . . . But the *Hunter* opinion is broadly written to embrace *any claim of educational malpractice, whether it involves a complaint of negligent evaluation of a child's learning abilities or some other kind of negligence.* Because the claim is not recognized as a proper one in Maryland law, Count III will be dismissed.") (emphasis added).

In the case now before this Court, where the gravamen of the Plaintiffs' claims is that the Board allegedly failed to properly train and supervise Defendant Marsh, the analysis is no different than in the cases discussed above where courts have rejected negligent training and supervision claims against school systems and universities. *See Alban v. Bd. of Educ. of Harford Cty.*, 64 Md. App. 169, 174 (1985) (affirming summary judgment in favor of the Harford County Board of Education and rejecting plaintiff's attempt to distinguish *Hunter* "by arguing that the injury complained of in this case was a physical one, whereas psychological injuries were complained of in the other two cases" and finding that "is a distinction without a difference"). The fact that the Court of Special Appeals in 2018 not only embraced the reasoning in *Hunter* but applied it broadly to affirm the rejection of the negligent supervision claims asserted by Dr. Gurbani is of particular significance and reaffirms the long-standing public policy principle that courts refrain from recognizing tort claims stemming from questions of the proper form and manner of training and supervision of school employees. As a matter of public policy, the Court of Appeals has rejected all such claims, not only "because of the difficulty in fashioning a legal standard of care and the immeasurability of damages, but also because it did not want to make courts the 'overseers of both the day-to-day operation of our educational process as well as the formulation of its governing policies.'" *James*, 441 F. Supp.2d at 759 (citing *Hunter*, *supra*).

## 2. Plaintiffs Fails to State a Claim for Negligent Training or Negligent Supervision.

Even if a negligent training and supervision claim were cognizable against the Board, Plaintiffs nonetheless fail to state a claim for relief under the theories of negligent training and supervision asserted in Count II. Other that legal conclusions couched as factual allegations, the Complaint fails to articulate why or how the Board "failed to adequately train and/or supervise Defendant Marsh" nor does it provide sufficient factual detail to explain how the Board could have

protected the minor Plaintiffs with proper training or supervision but only asserts bald, conclusory allegations that mirror the elements of the cause of action.[7] Given the deficiency of the allegations set forth in the Complaint, Plaintiff's claim for negligent training and supervision against the Board in Count II should be dismissed.

"To survive a motion to dismiss the negligent hiring, retention and supervision claim, [a plaintiff] must establish the following five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the *employer's actual or constructive knowledge of such incompetence*; (4) the employee's act or omission causing the plaintiff's injuries; and (5) *the employer's negligence in hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries*." *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272 (2011) (emphasis added); *see also Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (1996) (further explaining that a plaintiff must allege and ultimately prove that the employer "had or should have had knowledge of [the employee's] conduct or general character which would have caused a prudent employer in these circumstances

---

[7] Indeed, it is patently obvious that a school employee should refrain from engaging in sexual relations with a student. In *Hammond v. Board of Education of Carroll County*, 100 Md. App. 60, 68 (1994), the Court of Special Appeals held that that there was no duty to warn of the obvious, and reasoned as follows:

> The Court of Appeals explained more than twenty-five years ago that when a pleading alleges a danger that is "ordinary and obvious," it has not sufficiently alleged "circumstances which would require the defendants to give a warning." *Read Drug & Chem. Co. v. Colwill Constr. Co.,* 250 Md. 406, 417, 243 A.2d 548 (1968); *see also Figgie Int'l, Inc. v. Tognocchi,* 96 Md. App. 228, 240, 624 A.2d 1285, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993) (in Maryland "there is no duty to warn someone of an obvious danger").

*Hammond v. Board of Education of Carroll County*, 100 Md. App. 60, 68 (1994).

The same reasoning applies with at least equal force to the Plaintiffs' negligent training claim in this case where, it is submitted, the moral and legal prohibitions against adult educators sexually abusing school children are so patently obvious that there is no need for a school system to specifically train teachers to refrain from doing so. This is especially true where, as here, the conduct alleged is both contrary to state law, Board policy, and *per se* beyond the scope of employment. *See, e.g., Matta v. Board of Education of Prince George's County*, 78 Md. App. 264, 274 (1989) (reasoning that, it is not "even potentially possible for any court or reasonable jury to conclude that teachers are 'authorized' to sexually abuse or harass their students").

to have taken action").  Furthermore, "there is a rebuttable presumption that an employer uses due care in hiring an employee" which may only be rebutted by showing that the employer knew or should have known about the employee's potentially dangerous characteristic, such as a criminal record. *Evans v. Morsell*, 284 Md. 160, 165 (1978); *see also Horridge v. St. Mary's Cty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004); *Henley v. Prince George's County*, 60 Md. App. 24, 37 (1984), *aff'd in relevant part*, 305 Md. 320 (1986).  In cases involving intentional torts committed by employees, the "critical standard" is "whether the employer knew or should have known that the individual was potentially dangerous."  *Evans*, 284 Md. at 165; *Jordan v. W. Distrib. Co.*, 135 F. App'x 582, 589 (4th Cir. 2005) (same).

As noted above, "the facts comprising the cause of action must be pleaded with sufficient specificity," and "[b]ald assertions and conclusory statements by the pleader will not suffice." *Bobo*, 346 Md. at 708-09, 697 A.2d at 1372-73.  Yet, Plaintiffs have done exactly what the Court of Appeals expressly warned against.  At best, Plaintiffs provide nothing more than a formulaic recitation of the elements as the basis for their negligent training and retention claim.  Although Plaintiffs allege that the Board failed to properly hire, train, supervise, and retain Defendant Marsh (*see* ECF 2, ¶¶ 62-65), the Complaint is completely devoid of any specific factual allegations to support those conclusory allegations.  *See Keerikkattil v. Hrabowski*, No. CIV.A. WMN-13-2016, 2013 WL 5368744, at *10–11 (D. Md. Sept. 23, 2013) (dismissing negligent training and supervision claim where "Plaintiff does not allege, however, what duty Hrabowski and Young owed, as President and Vice President of UMBC, in training and supervising Cullen (or any other named Defendant)" and "does not allege any facts stating how that duty was breached, or allege facts sufficient to support a claim that the employees involved committed a negligent or intentionally tortious action").

Plaintiffs further fail to allege specific facts which plausibly establish that the Board knew or should have known of some potentially dangerous characteristic or propensity of Defendant Marsh. *See Henley*, 60 Md. App. at 37. Otherwise stated, Plaintiffs fail to allege any prior knowledge on the part of the Board concerning some dangerous propensity of Defendant Marsh. The absence of such facts from the Complaint further underscores Plaintiffs' failure to allege a *prima facie* claim for negligent training and supervision. Count II should be dismissed accordingly.

### 3. Plaintiffs fail to adequately allege gross negligence against the Board.

In Count IX of the Complaint, Plaintiffs allege that the Defendants breached a duty to "act or refrain from acting in a manner that does not create a wanton and reckless disregard for others." ECF 2, ¶116. To state a cause of action for gross negligence under Maryland law, however, a plaintiff must do more than simply "throw in the term 'gross negligence'" as Plaintiffs have done here. *See Foor v. Juvenile Services*, 78 Md. App. 151, 169-170, 552 A.2d 947, 956, *cert. denied* 316 Md. 364, 558 A.2d 1206 (1989). Rather, a plaintiff must plead specific facts describing how the defendant's alleged acts or omissions constitute "malice, evil intention, or wanton, willful, or reckless disregard for human life or the rights of others." *See Wells v. State*, 100 Md. App. 693, 706, 642 A.2d 879, 885, *cert. denied*, 336 Md. 560, 649 A.2d 602. This the instant Plaintiffs fail to do.

Concerning gross negligence, the Court of Special Appeals in *Foor* upheld the dismissal of gross negligence claims against employees of the Maryland Juvenile Services Administration who allegedly misled a foster family by failing to inform them about the violent nature of a teenage foster child who later murdered the family's natural child. As tragic as the case was, the *Foor* Court reasoned that it was simply "not enough" just to use the term "gross negligence" without

more in an effort to meet the high pleading standard for gross negligence. *Foor*, 78 Md. App. at 169-70, 552 A.2d at 956. There, the Court reasoned as follows:

> In *Bannon v. B. & O. R.R. Co.*, 24 Md. 108, 124 (1866), the Court observed that "[g]ross negligence is a technical term: it is the omission of that care 'which even inattentive and thoughtless men never fail to take of their own property,' it is a violation of good faith . . . It implies malice and evil intention." That standard has remained more or less intact. Gross negligence has been equated with "willful and wanton misconduct," a "wanton or reckless disregard for human life or for the rights of others." *White v. King*, 244 Md. 348, 223 A.2d 763 (1966). In *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12 (1968), the Court, *quoting* from 4 Bashfield, *Cyclopedia of Automobile Law and Practice* § 2771 (1946), held that a "wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." When dealing with such a standard, bald and conclusory allegations will not suffice; specificity is required.
> *Id.*

Ultimately the *Foor* Court held that the Complaint's specificity was "woefully lacking" insofar as "[n]owhere in the complaint [did] the plaintiffs allege[] any malice or anything that would constitute malice on the part of the [defendants]." *Id.* Accordingly, the court affirmed the trial court's ruling that the plaintiffs had failed to assert a viable gross negligence claim. *Id.*

A similar result was reached in *Wells*. There, the Court of Special Appeals addressed gross negligence claims brought against employees of the Baltimore City Department of Social Services who allegedly failed to take prompt and effective action in response to years of repeated child abuse which resulted in the death of one sibling and the severe emotional and physical distress of another. The plaintiff (*i.e.*, the surviving sibling) alleged that the defendants took no action to protect him and his deceased sister despite the fact that the defendants had received repeated reports that the plaintiff's mother and her boyfriend subjected the plaintiff and his deceased sister to abuse so horrific that, as Chief Judge Wilner noted, the complaint was "not easy to read with any substantial degree of emotional detachment." 100 Md. App. at 698.

Unlike the complaint in *Foor*, the complaint in *Wells* at least attempted to allege that the defendants' "acts or omissions were committed willfully, wantonly, and with disregard of [the Plaintiff's] rights." *Id.* at 703, 642 A.2d at 884. Nevertheless, the *Wells* Court reasoned that the complaint was deficient and upheld its dismissal because the plaintiff "failed, completely, to allege the kind of wanton, willful, or reckless conduct . . . necessary to sustain an action for gross negligence." *Id.* at 704-05, 884-85.

Here, the factual allegations pertaining to the Board are woefully inadequate to establish Plaintiffs' claim for gross negligence. While the allegations certainly describe conduct by Defendant Marsh which, if true, would constitute gross negligence insofar as she acted wantonly, willfully, recklessly, and maliciously in grooming and abusing students, the Complaint is devoid of any similar factual allegations pertaining to the Board which suggest that the Board acted with gross negligence. For these reasons, Count IX against the Board is subject to dismissal.

## C. MARYLAND CONSTITUTIONAL CLAIMS (COUNTS VII, VIII, AND XI).

### 1. Article 24 Due Process and Article 26 Search and Seizure.

Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Plaintiff's Article 24 claim in Count VII must be dismissed for two independent reasons. With respect to the Board, Plaintiffs offer two theories for holding the Board liable, including that: (a) the Board had a "policy, pattern, and/or practice of inaction that facilitated the abuse of Plaintiff(s)" (ECF 2, ¶ 95); and (b) the "Board is vicariously liable for Defendant Marsh's violations of Plaintiff(s)'s rights under Article 24 of the Maryland Declaration of Rights." *Id.*, ¶ 101. As explained below, neither theory provides Plaintiffs a legally sufficient claim for relief.

In Count VIII, Plaintiffs allege that "Defendant(s)['] actions deprived Students Doe #1, #2, and #3 of their rights under Article 26 of the Maryland Declaration of Rights, including, but not limited to freedom from unlawful search or seizure, loss of liberty, and the right to bodily integrity." *Id*., ¶ 104. With respect to the Board, Plaintiffs offer two theories for holding the Board liable, including that: (a) the Board had a "policy, pattern, and/or practice of inaction," (*id.*, ¶¶ 107); and (b) the "Board is vicariously liable for Defendant Marsh's violations of Plaintiff(s)' rights under Article 26 of the Maryland Declaration of Rights." *Id.*, ¶ 113. As with their Article 24 claim, Plaintiffs' Article 26 claim likewise fails against the Board as explained below.

## 2. Plaintiffs' Articles 24 and 26 Claims Fail as a Matter of Law Because Maryland does not Recognize *Longtin* Claims against School Boards.

The first theory of liability asserted by Plaintiffs in Counts VII and VIII is that the "Board adopted a policy, pattern, and/or practice of inaction that facilitated the abuse of Plaintiffs, that the Board had "an official policy of inaction[,]" and that the "Board's policy, pattern, and/or practice of inaction was the moving force behind the actual constitutional deprivation" in violation of the Maryland Declaration of Rights. ECF 2, ¶¶ 95, 107. Under Maryland law, Counts VII and VIII constitute *Longtin* claims, the Maryland constitutional counterpart to a *Monell* claim under 42 U.S.C. § 1983,[8] and must be dismissed because the Board, as a State agency, is not susceptible to suit for such claims as a matter of law.

In *Prince George's County v. Longtin*, 419 Md. 450 (2011), the Maryland Court of Appeals considered whether a "pattern or practice" claim like that which exists under 42 U.S.C. § 1983 (known as a *Monell* claim), exists under the Maryland Constitution. In holding that such

---

[8] 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the other party in an action at law, suit in equity, or other proper proceeding for redress."

a claim does exist, the court made clear that such claims may only be brought against local governments or municipalities. However, the court gave absolutely no indication that it would extend its holding to State agencies. Specifically, the Court reasoned:

> *Monell* is the origin of a "pattern or practice" claim in federal law. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, (1978). *Monell* concerned a claim under the federal Civil Rights Act, 42 U.S.C. § 1983, by a class of female federal employees claiming that federal agencies required pregnant women to take unpaid leaves of absence during their pregnancy. The claim had been dismissed by the Second Circuit under the Supreme Court's holding of *Monroe v. Pape,* 365 U.S. 167 (1961), which held that municipal corporations were not "people" under 42 U.S.C. § 1983 and could not be sued, either directly or under a theory of *respondeat superior.* The *Monell* Court was called to re-examine *Monroe,* and the extent to which a municipality could be liable for constitutional violations.

> After a detailed analysis of legislative history, the Court overruled *Monroe's* holding that a ***municipality*** did not qualify as a "person" under Section 1983:

>> ***Local governing bodies***, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

> *Id.* at 690-91. The Court, however, confirmed that ***municipalities*** were still free from *respondeat superior* liability under § 1983, concluding: "a ***municipality*** cannot be held liable solely because it employs a tortfeasor[.]" *Id.* at 691 (emphasis [*i.e.*, italicization of *respondeat superior*] in original). The *Monell* decision thus set a standard under which a ***municipality*** is liable under § 1983 for its employee's actions only if it "'causes' that employee to violate another's constitutional rights." *Id.* In doing so, the Supreme Court shielded ***municipalities*** from liability in most cases of constitutional violations by public officials, and subjected them to liability only in that small subset of cases where the violation was "caused" by the ***municipality***.

> In contrast, Maryland's constitution requires more of its ***municipalities***, and accordingly this Court has declined to shield ***municipalities*** from the unconstitutional acts of its officials. *See DiPino v. Davis,* 354 Md. 18 (1999).

> \*　　\*　　\*

The Defendants' arguments on this issue caution that allowing a "pattern or

practice" claim imposes burdens on *local governments* beyond those imposed by 42 U.S.C. § 1983. Specifically, they argue that this direct suit would "greatly expand the § 1983 liability of *counties and municipalities* beyond that contemplated by Congress." The Defendants ignore that Maryland has already "greatly expanded the liability of counties and municipalities beyond" the scope of § 1983 by imposing *respondeat superior* liability on *municipalities*. In *DiPino*, we held that, unlike federal law, Maryland's constitution imposed an affirmative obligation to avoid constitutional violations by its employees through "adequate training and supervision" and by "discharging or disciplining negligent or incompetent employees." Clearly, if Maryland imposes on *local governments* an obligation to prevent unconstitutional conduct by its employees, those same governments may not, with impunity, cause such conduct by unconstitutional polices or practices. A pattern or practice claim is merely a more egregious subset of the actions that are prohibited by Maryland constitutional law.

*　　*　　*

As we clearly stated in *DiPino,* Maryland's constitutional protections require more from public officials and *municipalities* than § 1983, and the rules and procedures of applying them are divergent from the federal rules. Like the Court of Special Appeals, we find our jurisprudence rife with evidence that Article 24 provides protection to individuals against unconstitutional "pattern or practices" of *municipalities*.

*Longtin*, 419 Md. at 492-96 (emphasis added) (parallel citations omitted).

It is undisputed that Maryland county boards of education are State agencies as opposed to local or municipal agencies. *See, e.g., Bd. of Educ. of Baltimore County v. Zimmer-Rubert*, 409 Md. 200, 206 (2009) (stating that "[w]e have long considered county school boards to be State agencies rather than independent, local bodies").[9] Further evidence of the fact that local boards of education are not local government agencies lies in the fact that local boards of education, like the Board here, are not subject to the Local Government Tort Claims Act, codified at Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-301 *et seq. See Dean v. Bd. of Educ. of Cecil County*, 71 Md. App.

---

[9] Courts routinely dismiss Section 1983 claims against Maryland county boards of education because they are State agencies and, therefore, not "persons" under 42 U.S.C. § 1983. *See, e.g., James v. Frederick County Pub. Schs.*, 441 F. Supp. 2d 755, 760 (D. Md. 2006) (dismissing 42 U.S.C. § 1983 claims against the Board of Education of Frederick County on the basis that "[t]his court has made clear, consistently and repeatedly, that the county boards of education of Maryland are state agencies").

92, 95-97 (1987), *cert. denied*, 310 Md. 490 (1987) ("We believe that [CJP] § 5-306 [subsequently recodified at CJP § 5-301] is not applicable to county boards of education. . . .  At no time since the original enactment in 1941 has the statute ever mentioned county boards of education; it has referred to counties, county commissioners, municipal corporations, and corporate authorities of municipal corporations, but never to county boards of education."); *see also* CJP § 5-301 (enumerating, by name, the local governmental entities to which the Local Government Tort Claims Act applies, and excluding local boards of education from the list).

In light of the foregoing, at least one court has concluded that *Longtin* claims are not viable against State agencies.  In *Rosa v. Board of Education of Charles County*, Civ. No. 8:11-cv-02873-AW, 2012 WL 3715331 (D. Md. Aug. 27, 2012), Judge Williams opined as follows:

> In Count VIII, Rosa alleges a "pattern or practice" claim under Maryland state law against the Board.  *See generally Prince George's County v. Longtin,* 419 Md. 450 (2011). The crux of Rosa's argument is that the Board had a pattern or practice of allowing sexual harassment (a constitutional tort under Article 24) to persist in the workplace.
>
> *Longtin* claims are essentially Maryland's version of *Monell* claims.  *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978).  In *Monell,* the Supreme Court held that plaintiffs can sue municipalities for damages for constitutional deprivations where policies or customs of the municipalities cause the constitutional deprivations. *See id.* at 690–94.  The Monell Court expressly limited its holding to local government units which are not considered part of the State for Eleventh Amendment purposes. *Id.* at 691 n. 54.
>
> Against the backdrop of *Monell,* the *Longtin* court considered whether "Maryland law recognizes a 'pattern or practice' claim against a local government for unconstitutional policies."  419 Md. 450, 19 A.3d at 883.  The court answered this inquiry affirmatively and, in so doing, concluded that the substantive standards underlying the claims diverged to an appreciable degree.  *See id.* at 883–89.  Even so, **the *Longtin* court neither stated nor intimated that plaintiffs could institute pattern or practice claims against state government agencies**. *See id.*
>
> In view of this authority, the Court dismisses Rosa's *Longtin* claim outright.  It is well-settled in Maryland that the "Court of Appeals undoubtedly considers county school boards instrumentalities of the State rather than independent, local bodies." *Zimmer–Rubert v. Bd. of Educ. of Balt. Cnty.,* 179 Md. App. 589 (2008) (citing

cases).  Accordingly, *Longtin,* which extends pattern or practice liability to local governments, is inapplicable on its face.  **Rosa argues that the policy considerations undergirding *Longtin* justify extending pattern or practice liability to state agencies.  However, the Court deems it exceedingly unlikely that the Court of Appeals of Maryland would have ushered in such a radical change in legal landscape *sub silentio.*  Therefore, the Court dismisses Count VIII of the Amended Complaint.**

*Rosa*, *supra*, at *9-10 (emphasis added) (some parallel citations omitted).

Judge Williams' logic is equally applicable here.  Because *Longtin* claims (and *Monell* claims, upon which *Longtin* claims are based) only apply to municipal agencies, they are inapplicable on their face to State agencies like the Board.  Counts VII and VIII against the Board should be dismissed accordingly.

### 3.  Plaintiffs' Vicarious Liability Theory Fails as a Matter of Law.

Plaintiffs also seek to impose liability on the Board under Articles 24 and 26 through a vicarious liability theory. This approach fails for the same reasons outlined in Section III(A)(1), *supra* – i.e., Defendant Marsh's conduct as alleged in the Complaint was clearly beyond the scope of her employment. Although the Court of Appeals has explicitly stated that "***local government*** entities do, indeed, have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees ***within the scope of their employment***," *DiPino v. Davis,* 354 Md. 18, 51-52 (1999) (emphasis added), the intentional conduct alleged in the Complaint was clearly outside the scope of Defendant Marsh's employment. Even assuming *arguendo* that the same concept applies to State agencies such as the Board, Plaintiffs' claims fail for the simple reason that Defendant Marsh's conduct was clearly outside the scope of her employment.  Consequently, Plaintiffs' attempt to assert vicarious Article 24 and Article 26 claims against the Board fails as a matter of law.

#### 4. Article VIII, § 1 Does not Confer a Private Right of Action upon Plaintiffs.

In Count XI, Plaintiffs allege that "the abuse suffered by Student[s] Doe #1, #2, and #3" denied the Plaintiffs the right to a through and efficient public school education guaranteed by the Maryland Constitution, Article VIII, Section 1. ECF 2, ¶129. This claim ignores the fact, however, that Article VIII of the Maryland Constitution does not confer upon a private plaintiff an independent cause of action. On this basis alone, Count XI against the Board should be dismissed.

Article VIII of the Maryland Constitution was intended to create and fund free public education for all Marylanders. In *Board of Education of Worcester County v. Beka Industries, Inc.*, 190 Md. App. 668, 694 (2010), *aff'd* 419 Md. 194 (2011), the Court of Special Appeals characterized Article VIII as the "mandate" prescribing the creation by the Maryland legislature of a "state-wide public school system." In *Board of Education of Prince George's County v. Prince George's County Educators Association, Inc.*, 309 Md. 85, 111 (1987), the Court of Appeals observed that "County boards of education are public corporate bodies created by statute, Code (1978, 1985 Repl.Vol.), §§ 3-103, 3-104 of the Education Article, *pursuant to Article VIII of the Maryland Constitution*." (emphasis added). In other words, Maryland courts have long interpreted the limited purpose of Article VIII as authorization for the creation of the State's 24 local boards of education and their continued funding by appropriate – but not necessarily equal – taxation.

As the Court of Appeals held in *Hornbeck v. Somerset County Bd. of Educ.*, 295 Md. 597, 6650 (1983):

> The directive contained in Article VIII of the Maryland Constitution for the establishment and maintenance of a thorough and efficient statewide system of free public schools is not alone sufficient to elevate education to fundamental status. Nor do the budgetary provisions of § 52 of Article III of the Constitution require that we declare that the right to education is fundamental.

Absent a recognized fundamental constitutional right of Maryland children to a public education – a right that neither the United States Supreme Court nor the Maryland Court of Appeals has acknowledged – Article VIII cannot serve as the basis of a cause of action seeking to redress denial of such so-called "right." In *Widgeon v. Eastern Shore Hospital Center*, 300 Md. 520 (1984), the Court of Appeals recognized that certain provisions of the Maryland Constitution's Declaration of Rights – specifically Articles 24 and 26, which are the State analogues to the 4th and 14th Amendments to the U.S. Constitution which protect citizens from unreasonable searches and seizures and from the deprivation of liberty or property without due process, respectively – were not only fundamental rights, but could "be redressed through private legal action." 300 Md. at 529. Similarly, Maryland courts have recognized a private right of action predicated upon the violation of Article III, § 40 of the Maryland Constitution, which prohibits the Maryland General Assembly from enacting any law "authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation."[10] *See Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604 (2002); *PSC v. Highfield Water Co.*, 293 Md. 1 (1982); *Walters v. B.&O.R.R.*, 120 Md. 644 (1913).

The Court in *Widgeon* explained that since Articles 24 and 26 of the Maryland Declaration of Rights "were intended to preserve individual liberty and property interest," they could support an implied right of action. 300 Md. at 536. In so ruling, the court recognized that "where a statute establishes an individual right, imposes a corresponding duty on the government, and fails to provide an express statutory remedy, a traditional common law action will ordinarily lie." *Id*. In

---

[10] This provision of the Maryland Constitution is analogous to the so-called "Takings Clause" of the Fifth Amendment to the U.S. Constitution, which states that "private property [shall not] be taken for public use, without just compensation." *See Kelo v. City of New London*, 545 U.S. 469 (2005).

contrast, statutes "which were not intended to create specific individual rights" but, instead, were "designed only to confer a general benefit on the public at large" cannot form the basis of a private right of action. *Id.* "In conclusion," the *Widgeon* court held, "we do not suggest that a violation of every state constitutional right gives rise to a common law action for damages." *Id.* at 537.

The language of Article VIII does not suggest that any individual rights are implicated by its terms since it simply commands the General Assembly to "establish . . . a thorough and efficient System of Free Public Schools" and to fund that system by appropriate taxation. In other words, Article VIII was "designed only to confer a general benefit on the public at large," *Widgeon*, 300 Md. at 536 but was not intended to create an implied right of action allowing damages for every student contending a deprivation of access to public education.

Moreover, unlike so-called "self-executing" constitutional clauses, which are more susceptible to supporting a private right of action – *see Benson v. State,* 389 Md. 615 (2005)[11] – Article VIII by its very language is unenforceable absent enabling legislation. In *Espina v. Jackson*, 442 Md. 311 (2015), the Maryland Court of Appeals recently explained the concept of "self-executing" provisions of the State Constitution, such as Articles 24 and 26 of the Declaration of Rights, as follows:

> Petitioners use the term "self-executing rights" to describe their state constitutional claims under Article 24 of the Maryland Declaration of Rights. We clarify what is meant by "self-executing." A constitutional right is self-executing where "[i]t supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced ... it is self-executing only so far as it is susceptible of execution." *Benson v. State,* 389 Md. 615, 628–29, 887 A.2d 525, 533 (2005) (quoting *Davis v. Burke,* 179 U.S. 399, 21 S.Ct. 210, 45 L.Ed. 249 (1900)). In other words, a self-executing right is "enforceable judicially," meaning that a private right of action exists for its violation, without the need of

---

[11] In *Benson v. State*, *supra*, the Maryland Court of Appeals held that "[a] private right of action for violation of Article 14 [of the Maryland Constitution] may lie because it is a self-executing constitutional provision." 389 Md. at 628. Article 14 of the Maryland Declaration of Rights provides that "no aid, charge, tax, burthen or fees ought to be rated or levied, under any pretense, without the consent of the Legislature."

implementing legislation. *Id.* Article 24 is indeed "self-executing." *See Widgeon v. Eastern Shore Hosp. Ctr.,* 300 Md. 520, 536, 479 A.2d 921, 929 (1984) (explaining that a private right of action for damages for a violation of Article 24 exists at common law).

442 Md. at 321 n.7.

Section 2 of Article VIII contains a "sunset" provision requiring the General Assembly to constitute the State's "system of public schools" only through the first session of that body following enactment of the provision in 1867. Afterwards, Article VIII appears to expire absent continued validation through subsequent legislation. Article VIII, thus, created the constitutional foundation for legislation that eventually led to the adoption of the Education Article of the Annotated Code of Maryland and supported the creation of local boards of education as recognizable legal entities under Sections 3-103 and 3-104 of that Article. However, Article VIII was clearly not a "self-executing" provision of the State Constitution for which a private right of action could be recognized. *See Prince George's County v. Longtin,* 419 Md. 450, 470 (2011) ("On the one hand, the Court of Appeals has said that a State constitutional tort, such as one premised on a violation of a 'self-executing' constitutional provision, like Article 24 of the Maryland Declaration of Rights, is enforceable in a common law action for damages.").

On this basis alone, no cause of action may be derived from Article VIII. As the Court of Appeals observed in *Benson v. State*, *supra*:

> The Court has employed this common law tort analysis for constitutional claims previously, finding a right to sue for damages, but has done so only when it concluded that the constitutional provision at issue conveyed an individual right — for example, the right to be free from unreasonable searches and seizures or the right to be free from the taking of private property without just compensation.

389 Md. at 630. If, like Article VIII, the constitutional provision in question "does not secure or proclaim an individual right," 389 Md. at 631, it surely may not support a claim for monetary

damages.  Accordingly, Plaintiffs cannot sustain a cause of action under Article VIII of the Maryland Constitution and Count XI, therefore, should be dismissed.

### D.  PLAINTIFFS' COMMON LAW CLAIMS (COUNTS V, XII, XIII).

**1.  Plaintiffs' Invasion of Privacy Claim Fails Because the Board Cannot be Held Liable for Defendant Marsh's Conduct that Falls Outside the Scope of Her Employment.**

Like many of Plaintiffs' claims discussed herein, Plaintiffs' invasion of privacy claim lacks merit because the Board cannot be held liable for Defendant Marsh's intentional torts. In Count V, Plaintiffs allege that Defendant Marsh intentionally "intruded upon Plaintiffs' private place and/or affair" and Plaintiffs "did not" and "could not consent to Defendant Marsh's actions." ECF 2, ¶ 79. Plaintiffs further contend that the actions of "Defendant Marsh were performed intentionally and with malice." *Id.* at ¶82.  Simply put, the Board cannot, be held liable for the intentional or grossly negligent acts perpetrated by its employees or former employees as a matter of law.  To this end, the Court of Appeals in *Hunter v. Board of Education of Montgomery County*, opined:

> Where, as here, it is alleged that the individual educators have willfully and maliciously acted to injure a student enrolled in a public school, *such actions can never be considered to have been done in furtherance of the beneficent purposes of the education system*.  Since such intentional torts constitute an abandonment of employment, the Board is absolved of liability for these purported acts of its individual employees.

292 Md. 481, 491 n. 8 (1982) (emphasis added); *see also Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 120 Md. App. 236, 252-55 (1998) (holding that the Baltimore City Board of School Commissioners could not be held vicariously liable for teacher's assault, battery, and intentional infliction of emotional distress on a special education student in the teacher's class at school); *Savoy v. Charles Cty. Pub. Sch.*, No. CIV.A. AW-09-788, 2010 WL 481345, at *5 (D. Md. Feb. 5, 2010) (stating that "as a matter of law it cannot be liable for the intentional torts of its employees under a *respondeat superior* theory of liability").  Count V against the Board should be dismissed.

Even if the Board were liable for Defendant Marsh's conduct, Plaintiffs utterly fail to state a claim against the Board for invasion of privacy because the Complaint is devoid of any allegation against the Board that any of its members made any highly offensive publication of a private fact. *See Furman v. Sheppard*, 130 Md. App. 67, 77 (2000) (requiring publicity of a kind which would be highly offensive to a reasonable person and not of legitimate concern to the public). For this additional reason, Count V is subject to dismissal.

### 2. Plaintiffs Fail to Allege a Breach of Fiduciary Duty against the Board.

Plaintiffs fail to allege any facts to establish a fiduciary relationship between the Board and Plaintiffs (or between Defendant Marsh and Plaintiffs, for that matter). Instead, Plaintiffs recite conclusory statements in Count XII that a "fiduciary relationship existed," "Defendants breached the duty," and "Plaintiffs suffered," as a result. ECF 2, ¶¶ 132-134. Such bald, conclusory statement are legally insufficient to survive dismissal.

After decades of ambiguity, the Court of Appeals definitively recognized breach of fiduciary duty as an independent cause of action in *Plank v. Cherneski*, 469 Md. 548 (2020). To establish a breach of fiduciary duty as an independent cause of action in Maryland, a plaintiff must demonstrate: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank,* 469 Md. at 599 (quoting *Froelich v. Erickson*, 96 F.Supp.2d 507, 526 (D. Md. 2000)). In general, a fiduciary relationship may exist between parties "by common law, by statute, or by contract." *Id*. at 465. As the *Plank* Court explained:

> The remedy for a breach is dependent upon the type of fiduciary relationship, and the remedies provided by law, whether by statute, common law, or contract. . . . [A] court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis. If a plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of

fiduciary relationship and the specific breach is alleged, a court should permit the count to proceed. . . . Of course, this does not mean that every breach will sound in tort, with an attendant right to a jury trial and monetary damages. The remedy will be dependent upon the specific law applicable to the specific fiduciary relationship at issue.

*Plank*, 469 Md. at 599–600.

Here, Plaintiffs failed to identify a fiduciary duty owed by the Board to them as required. Instead, Plaintiffs have merely pled in a bald, conclusory manner that such duty exists. To be clear, Maryland law imposes on local school boards and their employees a general tort duty to exercise "reasonable care" to protect students from reasonably foreseeable harm under the doctrine of *in loco parentis*. *See Lunsford v. Bd. of Educ. of Prince George's County*, 280 Md. 665, 676 (1977). However, there exists no Maryland authority imposing a fiduciary duty on the Board as Plaintiffs seek to do here. Count X should be dismissed accordingly.

Moreover, the Complaint fails to even allege the *prima facie* elements of the tort or explain the basis of the alleged fiduciary duty and breach. ECF 2, ¶¶ 131-134. Well-established law informs this Honorable Court to disregard "threadbare recitals of a cause of action's elements supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and, thus, dismiss Count XII.

### E. *RESPONDEAT SUPERIOR* IS NOT A COGNIZABLE CAUSE OF ACTION.

Count XIII should be dismissed because Maryland law only recognizes *respondeat superior* as a theory of vicarious liability, not as a separate stand-alone cause of action. *See, e.g., Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CIV. A. CCB-07-2595, 2008 WL 2415035, at *5 (D. Md. June 3, 2008) (dismissing a stand-alone *respondeat superior* claim and explaining that "*[r]espondeat superior,* however, is not a separate cause of action, but rather is a doctrine that permits the imputation of liability on a principal or employer for the act of an agent or employee");

*Ross v. Prince George's Cnty., MD*, No. CIV.A. DKC 11-1984, 2012 WL 1204087, at *1 (D. Md. Apr. 10, 2012) ("*Respondeat superior* is a theory of liability, not an independent cause of action"); *Mason v. Bd. of Educ.,* No. WMN–10–3143, 2011 WL 89998, at *2 n. 3 (D. Md. Jan.11, 2011) ("Respondeat superior is not a separate cause of action, but rather a doctrine that permits the imputation of liability on a principal or employer for the act of an agent or employee"). Plaintiffs' attempt to recover through a *respondeat superior* cause of action fails as a matter of law.

### F.  MARYLAND STATUTORY CLAIM (COUNT X).

#### 1.  Plaintiffs' Claim Under The State Government Article is Not Cognizable Against the Board.

In Count X, Plaintiffs allege that the Board violated Md. Code, SG § 20-901 by engaging in discriminatory acts prohibited by SG §20-301, SG §20-304, SG §20-901, and SG §20-801. However, Md. Code Ann., State Gov't § 20-901 only provides a private right of action for employment cases – which, of course, is inapplicable to the present case.  *See* Md. Code Ann., State Gov't § 20-902.  Under that statute, only the Maryland Commission on Civil Rights may seek injunctive relief or judicial enforcement against a government respondent, further illustrating that Count X should be dismissed as to the Board.

Furthermore, SG § 20-304 states, in pertinent part, that "[a]n owner or operator of a *place of public accommodation* or an agent or employee of the owner or operator may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race, sex, age, color, creed, national origin, marital status, sexual orientation, gender identity, or disability." (emphasis added). This anti-discrimination provision only applies to a "place of public accommodation," which is specifically delineated by statute as the following:

(1) an inn, hotel, motel, or other establishment that provides lodging to transient guests;

(2) a restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food or alcoholic beverages for consumption on or off the premises, including a facility located on the premises of a retail establishment or gasoline station;

(3) a motion picture house, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment;

(4) a retail establishment that:

(i) is operated by a public or private entity; and

(ii) offers goods, services, entertainment, recreation, or transportation; and

(5) an establishment:

(i) that is physically located within the premises of any other establishment covered by this subtitle; or within the premises of which any other establishment covered by this subtitle is physically located; and

(ii) that holds itself out as serving patrons of the covered establishment.

Md. Code Ann., State Gov't § 20-301.

The foregoing definition of place of public accommodation does not include schools. Since public schools are omitted from the definition of places of public accommodation in SG § 20-301, the Legislature apparently did not intend for this provision to apply to schools. *See Orndorff & Spaid, Inc. v. Dep't of Licensing & Regulation*, 32 Md. App. 155, 157, 359 A.2d 104, 105 (1976) (stating that "it is a primary rule of statutory construction that courts may not attempt under the guise of construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature"); *see also Koons Ford of Baltimore, Inc. v. Lobach*, 398 Md. 38, 63, 919 A.2d 722, 737 (2007) ("The court's charge in interpreting a statute is to determine

the intent of the Legislature, not to insert language to change the meaning of a statute.") (citing *Walzer v. Osborne*, 395 Md. 563, 585, 911 A.2d 427, 440 (2006)).

Likewise, SG § 20-304 provides for no private civil cause of action. *See Baker v. Greyhound Bus Line*, 240 F. Supp. 2d 454, 455 (D. Md. 2003), *aff'd*, 63 F. App'x 164 (4th Cir. 2003) ("Finally, assuming that Greyhound is a public accommodation within the meaning of Maryland Code Article 49B § 5 [former SG 20-304] which prohibits discrimination in places of public accommodation, there is no private right of action under Article 49B."); *see also Westray v. The Porthole, Inc.,* 586 F. Supp. 834, 840 (D. Md. 1984) (dismissing claims under Maryland Code Article 49B § 5 on the basis that recognizing that "Article 49B, § 5 of the Annotated Code of Maryland does not expressly or impliedly permit private causes of action, but instead charges the Maryland Commission on Human Relations[12] with certain powers and responsibilities"); *Lawrence v. IMAGINE . . . !*, 333 F. Supp. 2d 379, 388 (D. Md. 2004) ("No private right of action will be inferred from a statute that was designed to confer a benefit on the public at large.").

More recently, in *M.R. by & Through N.R. v. Tajdar*, No. CV TDC-17-3836, 2018 WL 6050888, at *5 (D. Md. Nov. 19, 2018), the U.S. District Court for the District of Maryland conducted a thorough analysis of whether SG § 20-304 provides a private right of action in light of the statutory scheme for filing complaints with the Maryland Commission on Civil Rights in Title 20 of the State Government Article of the Annotated Code of Maryland and the statutory rights to file civil actions conferred therein. Specifically, the court explained:

> A person subject to discrimination in public accommodations "may file a complaint" with the Maryland Commission on Civil Rights, which may issue a complaint against the alleged perpetrator of discrimination "on its own motion." *Id.* § 20–1004; *see id.* § 20–101 (defining "discriminatory act" to include

---

[12] The Maryland Commission on Civil Rights was formerly known as the Maryland Commission on Human Rights.

acts prohibited under the public accommodations provisions). Although the statute expressly provides the right to file a civil action to individuals subject to employment discrimination, *id.* § 20–1013(a), and discrimination in housing practices, *id.* § 20–1035, there is no comparable provision providing a private right of action for claims of discrimination in public accommodations. Indeed, in 2009, the Maryland General Assembly amended Section 20–1013 to add the language that explicitly limited the private right of action to employment discrimination claims. H.B. 54, 2009 Leg., 426th Sess. (Md. 2009) (adding clarifying language to establish that "certain provisions of law relating to civil actions elected or filed by certain complainants apply only to unlawful employment practices"). Thus, Maryland anti-discrimination statutes do not authorize a private individual to file a civil action in court regarding disability discrimination in public accommodations. *See Baker v. Greyhound Bus Line*, 240 F. Supp. 2d 454, 455 (D. Md. 2003); *cf. Dillon v. The Great Atlantic & Pacific Tea Co.*, Inc., 403 A.2d 406 (Md. Ct. Spec. App. 1979) (holding that under predecessor statutes, "the sole means of redress" available to a plaintiff alleging disability discrimination in employment "was to complain to the Human Rights Commission," the responsible agency under the then-operative statute).

*Id.* Accordingly, the court granted the defendant's motion to dismiss plaintiff's claim under SG §§ 20-302, 20-304, and 20-305 because "the Maryland anti-discrimination statutes do not provide a private right of action allowing individuals to file suit to allege disability discrimination in public accommodations." *Id.*; *see also Hodge v. Cordish Companies Inc.*, No. CV ELH-17-254, 2017 WL 3007069, at *6 (D. Md. July 14, 2017) (recognizing that "S.G. § 20-1004 provides a process by which an aggrieved person can pursue relief through the Maryland Commission on Civil Rights" and that "this requirement does not depend on whether the defendants are private parties or government entities").

Simply put, Plaintiffs are not suing under the premise of employment discrimination and even if their claim were somehow applicable to the Board, they have failed to exhaust required administrative remedies before the Maryland Commission on Civil Rights before bringing this action. For these reasons, Plaintiffs cannot maintain a cause of action against the Board under Md. Code Ann., State Gov't § 20-304 or § 20-902. Plaintiffs' claim in Count X is inapplicable to the Board and should be dismissed, accordingly.

### G. FEDERAL STATUTORY CLAIMS (COUNTS XIV, XV, XVI, XVII, XVIII, XIX).

#### 1. Plaintiffs Fail to Allege an Adequate Title IX Claim Against the Board.

Title IX is an education law designed to end discrimination on the basis of sex in educational programs that receive federal funds, but it is not a tort law subject to tort law standards. *See, e.g., Doe v. Bd. of Educ. of Prince George's County*, 605 Fed. Appx. 159, 168 (4th Cir. 2015) (rejecting use of "a negligence standard" in determining Title IX liability).[13] Nevertheless, Plaintiffs have pled a threadbare recital of the elements of a Title IX claim. In Count XV, for example, Plaintiffs contend that Defendants "intentionally discriminated against students on the bases of sex" because Defendant Marsh "targeted male students" and Defendants knew this discrimination "was occurring and were deliberately indifferent" to it. ECF 2, ¶ 150—53.

Fatally absent from the Complaint is any allegation as to when and which Board member(s) and/or appropriate persons received actual notice of the alleged abuse by Defendant Marsh. Indeed, it is well settled that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290; *see also Baynard*, 268 F.3d at 237 (explaining that "Title IX conditions 'an offer of funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds'") (quoting *Gebser*, 524 U.S. at 286). Without an allegation as to which official

---

[13] It is equally well settled that *respondeat superior* and "constructive notice" are not the relevant standards for imposing liability on a school system under Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *see also Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001) (stating that "the contractual nature of Title IX requires that a funding recipient have notice that it may be liable for a monetary award, *i.e.,* it must actually be aware of the discrimination and fail to remedy it").

with corrective authority was actually aware of Defendant Marsh's abuse, Plaintiffs' factual allegations fail to rise to "more than [the] sheer possibility that [the] defendant[s] [ ] acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such woefully inadequate pleading should result in the dismissal of County XV against the Board.

### 2. Plaintiffs' Title VI Claim is Time-Barred.

In Count XIV, Plaintiffs claim that Defendants violated Title VI by "intentionally discriminat[ing] against students on the bases of race," ECF 2, ¶142. Plaintiffs further allege that "Defendant Marsh intentionally targeted African American students . . . to groom for the purpose of sexual relations." *Id.*, ¶143.

Section 601 of Title VI of the Civil Rights Act of 1964 bars discrimination in "any program or activity receiving federal financial assistance." *Johnson v. Board of Education of Prince George's County*, 2014 U.S. Dist. LEXIS 103087, * 3 (D. Md. 2014), *citing* 42 U.S.C. § 2000-d. "Title VI of the Civil Rights Act of 1964 ... is parallel to Title IX [of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*] except that it prohibits race discrimination, not sex discrimination ...." *Gebser*, 524 U.S. at 286, 118 S.Ct. 1989. Here, Plaintiffs' Title VI claim against the Board fails for the same reason their Title IX claim fails – i.e., Plaintiffs fail to allege that any appropriate person within the Board had actual knowledge of Defendant Marsh's alleged abusive conduct directed at the minor Plaintiffs.

### 3. Plaintiffs' Section 1981 Claim Cannot Lie Against the Board.

In Count XVII, Plaintiffs claim that Defendants adopted a policy, pattern, and/or practice that facilitated the violation of Plaintiffs' rights and their tacit approval/deliberate indifference "amounted to an official policy of inaction," in violation of 42 U.S.C. § 1981. Section 1981 provides, in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licensees, and exactions of every kind, and to no other.

Plaintiff's Section 1981 claim against the Board is subject to dismissal because the Board is a state agency not subject to suit under Section 1981. In *Jett v. Dallas Independent School District,* 491 U.S. 701, 735 (1989), the Supreme Court held "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' provided the *exclusive* federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor." (emphasis added). Two years later, Congress amended Section 1981 with the passage of the Civil Rights Act of 1991, adding the following provision to the statute: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Fourth Circuit precedent instructs that the Supreme Court's holding in *Jett* was unaffected by the 1991 amendment. In the years since the passage of the Civil Rights Act of 1991, the Fourth Circuit has consistently relied upon *Jett* in holding that Section 1981 claims against state actors must be brought through Section 1983 as the exclusive federal remedy for such claims. *See, e.g., Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) ("We do not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991, which added subsection (c) to § 1981.") (referring to *Jett's* ruling that a state actor's violation of § 1981 rights can only be remedied by § 1983); *Farmer v. Ramsay*, 43 F. App'x 547, 553 (4th Cir. 2002) (holding that since under *Jett* "§ 1983 is the exclusive remedy for violations of § 1981 by state actors . . . . [plaintiff] has no cause of action based on § 1981 independent of § 1983"); *Lewis v. Robeson Cty.*, 63 F. App'x 134,

138 (4th Cir. 2003) ("In a suit brought against a state actor, Section 1983 is the exclusive federal remedy for a violation of the rights guaranteed in § 1981.").

As discussed, *supra*, Maryland county boards of education have long been considered State agencies. *See*, *e.g.*, *Bd. of Educ. of Baltimore County v. Zimmer-Rubert*, 409 Md. 200, 206, 973 A.2d 233, 236 (2009) (stating that "[w]e have long considered county school boards to be State agencies rather than independent, local bodies"); *James v. Frederick County Pub. Schs.*, 441 F.Supp.2d 755, 760 (D. Md. 2006) (dismissing 42 U.S.C. § 1983 claims against the Board of Education of Frederick County on the basis that "[t]his court has made clear, consistently and repeatedly, that the county boards of education of Maryland are state agencies").[14]

---

[14]     *See also Zimmer-Rubert v. Bd. of Educ. of Balt. County*, 179 Md. App. 589, 603, 947 A.2d 135 (2008) ("Given the pervasive State control over all aspects of Maryland public education and following the clear precedent of the [Maryland] Court of Appeals and the United States District Court for the District of Maryland, we hold that [the Board of Education of Baltimore County] is a state agency"), *aff'd*, *Board of Education v. Zimmer-Rubert* 409 Md. 200, 205, 973 A.2d 233 (2009); *Anne Arundel County Bd. of Educ. v. Norville*, 390 Md. 93, 887 A.2d 1029 (2005) (adopting, as *res judicata*, the U.S. District Court's finding that as an agency of the State of Maryland, the local board was entitled to Eleventh Amendment immunity from claims brought under the Age Discrimination in Employment Act); *State v. Bd. of Educ. of Montgomery County*, 346 Md. 633, 635 n. 1, 640, 697 A.2d 1334 (1997) (holding that in Maryland a local board of education is a State agency and that, as such, the board has "no right to question the constitutionality of the acts" of the General Assembly); *Bd. of Educ. of Prince George's County v. Mayor and Common Council of the Town of Riverdale*, 320 Md. 384, 390, 578 A.2d 207 (1990) (holding that although municipal governments are generally entitled to raise the defense of governmental immunity, they are prohibited from raising such a defense to an action brought by a board of education since the board is a State agency); *Montgomery County Educ. Ass'n v. Bd. of Educ. of Montgomery County*, 311 Md. 303, 317, 534 A.2d 980 (1987) (reasoning that "[l]ocal boards are state agencies, and, as such, are responsible to other appropriate state officials and to the public at large"); *Bd. of Educ. of Prince George's County v. Prince George's County Educ. Ass'n,* 309 Md. 85, 95 n.3, 522 A.2d 931 (1987) (acknowledging that "[c]ounty boards of education are, of course, state agencies and not agencies of the county governments").

        The judges of the U.S. District Court for the District of Maryland have consistently concurred with the Maryland state courts on the state agency issue.  *See DeLoatch v. Harford County Bd. of Educ.*, 2010 U.S. Dist. LEXIS 47635, *6 n.3 (D. Md. 2010); *aff'd* 408 Fed. Appx. 686 (4th Cir. 2011); *Hanifee v. Bd. of Educ. of Kent County*, 2010 U.S. Dist. LEXIS 16203, *14-15 (D. Md. 2010); *Savoy v. Charles County Pub. Schs.*, 2010 U.S. Dist. LEXIS 10147, *8 (D. Md. 2010) ("Maryland state courts, and federal courts in Maryland, considering 'the pervasive State control over all aspects of Maryland public education,' have concluded that Maryland county boards of education are state entities entitled to Eleventh Amendment immunity."); *Lewis v. Bd. of Educ. of Talbot County,* 262 F. Supp. 2d 608 (D. Md. 2003); *Biggs v. Bd. of Educ. of Cecil County*, 229 F. Supp. 2d 437, 439 (D. Md. 2002) ("the local school board is a state agency entitled to invoke the protections of Eleventh Amendment immunity. . ."); *Adams v. Calvert County Pub. Schs.*, 201 F. Supp. 2d 516, 521 (D. Md. 2002) (finding that local boards are subject to overwhelming State control, and that "Maryland law has consistently treated local school boards as agencies of the state"); *Rosenfeld v. Montgomery County Pub. Schs.,* 41 F. Supp. 2d 581, 586 (D. Md. 1999); *Eisenberg v.*

*Jett* compels that the Section 1981 claim against the Board be dismissed since the Board is a state agency. *See Windsor*, 2016 WL 4939294, at *12 (holding that since "county boards of education are state agencies . . . *Jett* and *Dennis* provide an additional basis by which to dismiss the § 1981 claims against the Board"); *see also Crump v. Montgomery Cty. Bd. of Educ.*, No. PWG-12-3378, 2013 WL 5797362, at *6 (D. Md. Oct. 25, 2013) (recognizing that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units" and reasoning that "even if I were to . . . rephrase Plaintiff's claims as arising under § 1983 . . . those claims still cannot be asserted against the Board . . . [because] . . . [t]he Board – like all boards of education in Maryland – is a state agency") (citing *Jett,* 491 U.S. at 733, 109 S. Ct. 2702).

### 4. The Board is not a "Person" Subject to Suit Under Section 1983.

As explained in Section III(C)(2), *supra*, Section V.C., the Board of Education is a state agency . As a state agency, the Board is not a "person" subject to suit under Section 1983. Accordingly, Plaintiffs' claims thereunder should be dismissed under Fed. R. Civ. P. 12(b)(1).

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989), the Supreme Court held that "a State is not a person within the meaning of § 1983." In so holding, the Court specifically drew a distinction between its holding in *Monell*, which stated that municipalities and local governments *are* "persons" within the meaning of Section 1983, and its instant holding that states and their agencies are *not* "persons" within the meaning of Section 1983:

> Finally, *Monell* itself is not to the contrary. True, prior to *Monell* the Court had reasoned that if municipalities were not persons then surely States also were not. *Fitzpatrick v. Bitzer,* 427 U.S., at 452. And *Monell* overruled *Monroe,* undercutting

*Montgomery County Pub. Schs.*, 19 F. Supp. 2d 449, 452-53 (D. Md. 1988); *Jones v. Frederick County Bd. of Educ.*, 689 F. Supp. 535, 537-38 (D. Md. 1988).

that logic. But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, *Monell,* 436 U.S., at 690, n. 54, and we consequently limited our holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes," *ibid.* Conversely, our holding here does not cast any doubt on *Monell,* and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes. *See, e.g., Mt. Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274, 280 (1977).

*Will*, 491 U.S. at 70 (parallel citations omitted).

This Court has routinely dismissed claims asserted against county boards of education in Maryland pursuant to 42 U.S.C. § 1983 because those boards are state agencies and, thus, not "persons" susceptible to suit under 42 U.S.C. § 1983. *See, e.g., Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 851-52 (D. Md. 2015) (finding that "[i]t is well established that county school boards in Maryland are considered state agencies and that, as state agencies, school boards are not considered 'persons' under § 1983" and, consequently, granting dismissal "because the Board is not a person subject to § 1983 liability"); *Mayo v. Bd. of Educ. of Prince George's Cty.,* 797 F. Supp. 2d 685, 689 (D. Md. 2011), *aff'd,* 713 F.3d 735 (4th Cir. 2013) (dismissing claims under 42 U.S.C. § 1983 against the local board of education and its employees, reasoning that "[t]hese claims are not cognizable. State agencies are not "persons" within the meaning of § 1983").

In sum, the Board, as a state agency, is not a "person" subject to suit for damages under Section 1983. Accordingly, Plaintiffs' Section 1983 claim against the Board in Count XVI should be dismissed.

### H. SECTION 1982 IS INAPPLICABLE TO THIS CASE.

Plaintiffs bring a Section 1982 claim against the Defendants in Count XVIII. However, such claim is inapplicable to this case and should be dismissed, accordingly. 42 U.S.C. § 1982 provides, in pertinent part, the following: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase,

lease, sell, hold, and convey real and personal property." This Court recently recognized that "an Eighth Circuit case has stated the elements are: '(1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property.'" *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 541 (D. Md. 2020) (citing *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004)). "Section 1982 may be violated in the case of a 'municipal action benefiting white property owners that would be refused to similarly situated black property owners,' 'official action that depreciated the value of property owned by black citizens,' or action that would hamper black residents 'in the use of their property,' such as a street closing that 'severely restricted access to black homes.'" *Id*. (citing *City of Memphis v. Greene*, 451 U.S. 100, 123, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981)).

Tellingly, the instant Plaintiffs fail to allege any interference with their rights or benefits in connection with their ownership of real property. Simply put, a cause of action under Section 1982 does not apply to the sort of case that is now before this Court. Count XVIII should be dismissed accordingly.

## I. PLAINTIFFS' SECTION 1986 CLAIM FAILS.

Finally, Plaintiffs assert a claim under Section 1986 in Count XIX of the Complaint. Such claim, likewise, is subject to dismissal.

As an initial matter, "[v]iability of a § 1986 claim is based on the antecedent § 1985 claim." *Borkowski v. Baltimore Cnty., Maryland*, 414 F. Supp. 3d 788, 816 (D. Md. 2019); *see also Sellner v. Panagoulis*, 565 F.Supp. 238, 249 (D.Md. 1982) ("[S]ection 1986...'merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985.' ") (quoting *Williams v. St. Joseph Hosp.*, 629 F.2d

448, 452 (7th Cir. 1980)), aff'd, 796 F.2d 474 (4th Cir. 1986).  Plaintiffs fail to bring a claim under Section 1985.  On this basis alone, their Section 1986 claim must fail.

Furthermore, the one-year statute of limitations under Section 1986n has long expired.  *See* 42 U.S.C.A. § 1986. As Plaintiffs make clear in the Complaint, parent-plaintiffs first learned of the alleged sexual abuse in February 2019, over 3 years ago.  Yet, the Complaint was not filed until on or around February 5, 2022.  Thus, to the extent Plaintiffs assert a Section 1986 claim, such claim is time-barred. Moreover, is "is clear from the language of the statute that it does not provide for tolling of the statute of limitations." *See Aiken v. Bucks Ass'n for Retarded Citizens,* Civ. A. No. 91–2672, 1991 WL 243537 at 4 (E.D.Pa. Nov. 15, 1991); *Bieros v. Nicola,* 839 F.Supp. 332, 337 (E.D.Pa.1993). Thus, because the Board is immune and the claim is time-barred, Count XIX should be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Defendant Board of Education of Somerset County respectfully requests that this Honorable Court dismiss the Complaint against it in its entirety, with prejudice.

Respectfully submitted,

/s/ (filed electronically)
Lisa Y. Settles (Federal Bar No. 25838)
Adam E. Konstas (Federal Bar No. 18957)
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
Telephone:  (410) 339-5783
Facsimile:  (410) 832-5631
lsettles@pklaw.com
akonstas@pklaw.com
COUNSEL FOR THE DEFENDANT BOARD OF
EDUCATION OF SOMERSET COUNTY

4507648_1