**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MOTHER DOE #1, et al., | |
| v. | Civil Case No. RDB-22-1491 |
| BOARD OF EDUCATION OF SOMERSET COUNTY, et al. | |

### MEMORANDUM

Three students and their parents filed this suit against the Board of Education of Somerset County, and school district employee Samantha Williams Marsh, for Marsh's alleged grooming of, and eventual sexual misconduct with, the three children who are plaintiffs in this case. The original complaint, filed in the Circuit Court for Somerset County, alleged nineteen distinct causes of action against the defendants under state and federal law. The defendants removed the case to this Court based on the federal claims, and the plaintiffs ultimately filed an amended complaint in July 2022 containing eighteen of the original nineteen counts.[1] The Board now moves to dismiss each of the claims against it, Mot. to Dismiss, ECF 30, and Marsh asks the court to dismiss or grant summary judgment on most, but not all, of the claims against her, Partial Mot. to Dismiss or

---

[1] The eighteen claims in the operative complaint are: negligence (Counts I and III); negligent training and supervision (Count II); battery (Count IV); invasion of privacy (Count V); violation of Article 24 of the Maryland Declaration of Rights (Count VII); violation of Article 26 of the Maryland Declaration of Rights (Count VIII); gross negligence (Count IX); violation of Maryland Code, State Government § 20-901 (Count X); violation of Article VIII of the Maryland Constitution (Count XI); breach of fiduciary duty (Count XII); respondeat superior (Count XIII); violation of Title VI of the Civil Rights Act (Count XIV); violation of Title IX of the Education Amendments of 1972 (Count XV); violation of the Fourteenth Amendment to the United States Constitution (Count XVI); violation of 42 U.S.C. § 1981 (Count XVII); violation of 42 U.S.C. § 1982 (Count XVIII); and violation of 42 U.S.C. § 1986 (Count XIX). Am. Compl., ECF 27. The amended complaint omits the intentional infliction of emotional distress claim contained in Count VI of the original complaint. The plaintiffs also now voluntarily dismiss the respondeat superior and § 1986 claims against both parties and the Title VI and Title IX claims against Marsh.

1

for Partial Summ. J., ECF 33. The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6.

For the reasons explained below, the court will grant each motion in part and deny each motion in part. Specifically, the court will permit the plaintiffs to continue pursuing their claims of negligence, gross negligence, and breach of fiduciary duty, as well as their claims under 42 U.S.C. § 1982, Articles 24 and 26 of the Maryland Declaration of Rights, and Article VIII of the Maryland Constitution, against both parties. The plaintiffs' Title VI and Title IX claims against the Board, and their battery, invasion of privacy, and Fourteenth Amendment claims against Marsh, may also advance. The court will, however, dismiss the respondeat superior, § 20-901, § 1981, and § 1986 claims against both parties, dismiss the Title VI and Title IX claims against Marsh, and dismiss the Fourteenth Amendment claim against the Board.

## BACKGROUND

In ruling on a motion to dismiss, the court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Consistent with that standard, the court begins with an overview of the factual allegations as set out in the plaintiffs' complaint. The plaintiffs, three black males who were seventeen at the time of the alleged misconduct, and their parents, claim that Marsh abused her position as a school nurse at Crisfield Academy and High School ("Crisfield") to groom the student-plaintiffs and ultimately engage in sexual relationships with them. The Board, they assert, was aware of Marsh's conduct but failed to intervene.

Marsh joined Crisfield as a school nurse in 2017. *See* Am. Compl. ¶¶ 22-23, 53, ECF 27. The job was her first in a school setting. *Id.* ¶ 24. According to the plaintiffs, when Marsh took the job, she aspired "to have a 'black baby.'" *Id.* ¶ 42. So she set out to "have sexual relations" with "as many male African American students as possible." *Id.*

To that end, the plaintiffs say, Marsh engaged "in a process known as 'grooming'" to manipulate students, "gain access to them, coerce them into sexual activity, and reduce the risk of being caught." *Id.* ¶¶ 27-28. She leveraged her role as school nurse to implement the plan, enticing black students to the nurse's station—even "when they had no health care needs" and even "when they were assigned to be in different areas of the school"—with "candy, snacks, and other drinks" that were stored in her office. *Id.* ¶¶ 29-30. The tactic was so successful that the nurse's station began overflowing with student invitees to the extent that "students requiring actual medical attention or assistance had difficulty receiving that attention or did not receive that attention at all." *Id.* ¶ 31. The goal: Not only developing relationships with students, but also normalizing for them the idea of "breaking the rules" with Marsh. *Id.* ¶ 32.

From there, Marsh escalated the relationships. She began interacting with specific black students, including the plaintiffs, excessively, talking with them "in person, on social media, and via text messages during school hours and while on school property." *Id.* ¶ 35. She also gave them "small gifts," "special attention," and rides home. *Id.* ¶¶ 39, 41, 47. All this was designed to increase the amount of time she spent with the students, gain their trust, and develop their relationships in an apparently natural way without raising their suspicions. *Id.* ¶¶ 38, 47.

Ultimately, after "over a year" of targeting and grooming the plaintiffs "because they were male and African American," the relationships became explicitly sexual. *Id.* ¶ 47. At first, Marsh exchanged "sexually explicit text messages, conversations, and photographs" with the students.

*Id.* ¶ 37. Then, "between March 2018 and October 2018," Marsh "engaged in sexual relations with Student Doe #1, Student Doe #2, and Student Doe #3." *Id.* ¶ 53. At the time, each student was under eighteen. *Id.*

As a result of Marsh's sexual relationship with students at Crisfield, "a report of potential child sex abuse" was filed against her. *Id.* at 54. The Somerset County Sheriff's Office investigated, and "Marsh eventually pled guilty to three counts of fourth degree sex charges in the Circuit Court for Somerset County, Criminal Case No.: C-19-CR-19-000045." *Id.* ¶ 52. "These counts were directly related to" Marsh's sexual encounters with the student-plaintiffs. *Id.*

The plaintiffs allege that as all this was going on, the Board knew of Marsh's misconduct but did nothing. As "early as October 2017," Board agents and employees witnessed and appreciated Marsh's "red flag grooming behaviors," but "did nothing to increase Defendant Marsh's training or supervision to eliminate these behaviors and the risks associated with them." *Id.* ¶¶ 43, 51. The Board also "received complaints" about Marsh's behavior "from personnel at the school and concerned parents," but still did nothing. *Id.* ¶ 44. Then, in Spring 2018, the Board received a report demonstrating the product of Marsh's grooming activity: "Marsh had engaged in sexual activity with a student" (who is not a plaintiff here). *Id.* ¶ 46. Still, the Board "failed to take any action regarding that incident," and did not report it to "authorities for an independent investigation." *Id.* ¶ 46. Instead, Marsh remained employed at Crisfield—where she received no additional training, supervision, or scrutiny—and "engaged in sexual relations with" the student-plaintiffs "between March 2018 and October 2018." *Id.* ¶¶ 43-46, 53.

The parents of the student-plaintiffs became aware of Marsh's relationships with their children in 2019 as a product of the criminal investigation into Marsh's behavior. *Id.* ¶ 54. They

later filed this suit, together with their children, in state court in 2022. *See* Notice of Removal, ECF 1. The defendants removed the case to federal court based upon 28 U.S.C. § 1331, where the plaintiffs ultimately filed an amended complaint on July 26, 2022. The Board now moves to dismiss the claims against it in full. Marsh moves to dismiss, or for summary judgment on, all but the claims of negligence and gross negligence.

## LEGAL STANDARDS

The Board moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Marsh also moves to dismiss or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. For the reasons discussed below, the court will treat both defendants' motions as motions to dismiss and thus Rule 12(b)(6) will govern the court's analysis.

**I. Motion to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**II. Motion for Summary Judgment**

As an alternative to her motion to dismiss, Marsh moves for summary judgment under Federal Rule of Civil Procedure 56. The court considers only the pleadings in deciding a Rule 12(b)(6) motion. But where, as here, the parties present matters outside of the pleadings, the court may consider those matters if it treats the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Balt.*, 721 F.3d at 281. The styling of Marsh's motion provided notice that the court could treat it as one for summary judgment and consider material outside the pleadings. The plaintiffs, however, filed a Rule 56(d) affidavit attesting that at the time of briefing this motion, the plaintiffs had served discovery requests, but not yet received a production, and that the plaintiffs needed additional time to conduct discovery before responding to a motion for summary judgment. *See* Decl. of David C. M. Ledyard, ECF 38-1. Thus, the court will deny without prejudice Marsh's motion for summary judgment motion and construe both defendants' motions as motions to dismiss. *See id.* at 244-46.

## ANALYSIS

The plaintiffs' levy three categories of claims against Marsh and the Board: (1) common law tort claims; (2) state and federal statutory claims; and (3) state and federal constitutional claims. The court addresses each category in turn.

### I. Common Law Tort Claims

The plaintiffs allege several tort claims under Maryland law. They charge Marsh with (A) negligence, including gross negligence; (B) battery; (C) invasion of privacy; (D) and breach of fiduciary duty. As for the Board, they limit their claims to negligence (including gross negligence) and breach of fiduciary duty. The court discusses each claim below.[2]

#### A.  Negligence

The complaint alleges negligence and gross negligence against both Marsh and the Board. Marsh does not at this stage seek dismissal of either claim. The Board does.

The plaintiffs assert negligence claims against the Board under both a theory of direct liability (for failure to supervise) and vicarious liability (for Marsh's negligence). The Board is a state agency, *Beka Indus., Inc. v. Worcester Cnty. Bd. of Educ.*, 18 A.3d 890, 900 (Md. 2011), and thus susceptible to suits in tort under the Maryland State Tort Claims Act, Md. Code Ann., State Gov't § 12-104 (West); *see Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004). To state a direct claim of negligence, a plaintiff must demonstrate four elements:

---

[2] The amended complaint also includes a claim, Count XIII, styled simply "respondeat superior." The defendants each moved to dismiss Count XIII for failing to state an independent cause of action, and the plaintiffs now agree to voluntarily dismiss the claim. Relatedly, the plaintiffs' initial complaint contained in Count VI a claim for intentional infliction of emotional distress, but the amended complaint removes the claim and contains no Count VI. Thus, the court will grant the motions to dismiss Count XIII and will not address Count VI.

(1) duty; (2) breach; (3) injury; and (4) causation.[3] *See Horridge*, 854 A.2d at 1238. To state a vicarious liability claim against an employer, a plaintiff must make out a negligence claim against an employee acting within the scope of employment. *Women First OB/GYN Assocs., LLC v. Harris*, 161 A.3d 28, 34 (Md. 2017). Finally, to state a claim of gross negligence, a plaintiff must plausibly allege the defendant "inflict[ed] injury intentionally or" was "so utterly indifferent to the rights of others that" the defendant acted "as if such rights did not exist." *Beall v. Holloway-Johnson*, 130 A.3d 406, 415 (Md. 2016) (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).

Starting with direct liability, the Board seeks dismissal on the grounds that the plaintiffs' claim is one of educational negligence, which Maryland does not recognize, and that the complaint is factually insufficient to state a negligent supervision claim. The Board is correct that Maryland does not permit educational negligence claims, but casting the plaintiffs' claims as alleging educational negligence is a mischaracterization. *See Hunter v. Bd. of Educ. of Montgomery Cnty.*, 439 A.2d 582, 587 (Md. 1982). The educational negligence (or educational malpractice) "doctrine applies when a court is "asked to evaluate the course of instruction" or is "called upon to review the soundness of the method of teaching that has been adopted by an educational institution." *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 281 A.3d 876, 897 (Md. 2022) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)) (brackets omitted). In other words, it is limited to cases seeking review of "pedagogical decisions." *Id.* at 898. It does not extend to claims related to student safety. The plaintiffs' claims here, however, arise from the Board's purported failure to supervise an employee who it allegedly knew threatened student safety, so the educational

---

[3] In Maryland, "the elements of negligent supervision are identical to the elements of a general negligence claim." *Marrick Homes LLC v. Rutkowski*, 161 A.3d 53, 65 (Md. 2017).

negligence doctrine does not apply.

The Board's quarrel with the sufficiency of the complaint also fails. The Board "has a duty 'to exercise reasonable care to protect a pupil from harm.'" *See id.* at 899-900 (quoting *Lunsford v. Bd. of Ed. of Prince George's Cnty.*, 374 A.2d 1162, 1168 (Md. 1977)). The plaintiffs have stated a plausible claim that the Board breached that duty by failing to respond to a series of complaints over the course of more than a year that an employee was inappropriately grooming and engaging in illegal sexual relationships with students. Likewise, the plaintiffs have plausibly alleged that the Board's failure to intervene following initial complaints of misconduct caused the plaintiffs' injuries. The Board's motion to dismiss the direct negligence liability claim will therefore be denied.

Turning to the plaintiffs' vicarious liability theory, the Board's motion must also be denied. To reiterate, an employer is vicariously liable for the tortious conduct of an employee when that employee commits the tort while acting within the scope of employment. *Harris*, 161 A.3d at 34. Ordinarily, a school official's sexual misconduct is considered outside the scope of employment and thus cannot be a basis for vicarious liability. *Matta v. Bd. of Educ. of Prince George's Cnty.*, 552 A.2d 1340, 1345 (Md. 1989). Where an employer with "knowledge of all the material facts" ratifies an employee's misconduct, however, the employer may be held responsible. *Tower Oaks Blvd., LLC v. Procida*, 100 A.3d 1255, 1273 (Md. 2014). The plaintiffs here allege that the Board had actual knowledge of Marsh's grooming conduct based on its agents' firsthand observations and as a product of reports filed by both parents and school personnel. They claim further that the Board received a report that Marsh engaged in a sexual relationship with another student. Yet the Board did nothing. And Marsh then proceeded to engage in sexual misconduct with the student-plaintiffs. The Board's purported acquiescence to Marsh's misconduct is sufficient to sustain a

claim that it ratified her behavior and is thus subject to vicarious liability despite the normal rule that the sexual misconduct of school personnel falls outside the scope of employment.

Having determined that the plaintiffs' negligence claims may proceed under both a theory of direct and vicarious liability, the court also concludes that the plaintiffs' gross negligence claims may advance. The "distinction between negligence and gross negligence" is "a difficult one to establish in practice," and a "legally sufficient case of ordinary negligence will frequently be enough to create a jury question of whether such negligence was or was not gross." *Beall*, 130 A.3d at 415 (citations omitted). Following this logic, the court concludes that, at minimum, the plaintiffs must be permitted to conduct discovery before a distinction between negligence and gross negligence can be drawn in this case.

For each of these reasons, the court will deny the Board's motion to dismiss Counts I, II and IX.

### B.  Battery

Turning to intentional torts, the plaintiffs allege battery against Marsh only. A claim for civil battery must allege that a defendant effected an intentional "harmful or offensive contact with another without that person's consent." *Beall*, 130 A.3d at 416 (quoting *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999)). Marsh seeks dismissal solely on the basis that, in her view, her encounters with the student-plaintiffs were consensual. The complaint, however, repeatedly reiterates that none of the students consented to Marsh's conduct. At this stage in the proceedings, the court must accept the allegations in the complaint as true and deny Marsh's motion to dismiss Count IV.

### C. Invasion of privacy

As with the battery claim, the complaint's invasion of privacy claim is also limited to Marsh. Invasion of privacy is the "intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. 2000). Here again, Marsh's defense is consent. But as with the battery claim, the consent defense fails because the complaint is replete with allegations that the students' relationships with Marsh were non-consensual. The court will deny Marsh's motion to dismiss the invasion of privacy claim in Count V.

### D. Breach of fiduciary duty

The plaintiffs' final tort claim is against both Marsh and the Board for breach of fiduciary duty. "To establish a breach of fiduciary duty as an independent cause of action in Maryland, a plaintiff must demonstrate: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Gandy v. Howard Cnty. Bd. of Educ.*, No. 20-cv-3436, 2021 WL 3911892, at *5 n.4 (D. Md. Sept. 1, 2021) (quoting *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020)).[4] The fiduciary relationship may be a product of common law, statute, or contract. *Id.* "The elements of a breach of fiduciary duty claim mirror the elements of a negligence claim." *Id.* And the complaint here adequately states negligence claims against both Marsh and the Board. Thus, the court will permit the plaintiffs breach of fiduciary duty claim in Count XII to proceed.

In sum, Marsh's motion to dismiss Counts III, IV, V, IX, and XII will be denied, as will the Board's motion to dismiss Counts I, II, IX, and XII. With the plaintiffs' consent, however, the

---

[4] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

parties' motions to dismiss the respondeat superior claim in Count XIII will be granted.

## II. Statutory Claims

In addition to their common law tort claims, the plaintiffs assert a number of statutory claims under both state and federal law. The court's discussion of each claims follows.

### A.  § 20-901

The plaintiffs start with a state law claim, alleging that both defendants violated their right to be free from discrimination in a place of public accommodation. *See* Md. Code Ann., State Gov't § 20-901 (West); Md. Code Ann., State Gov't § 20-304 (West). Maryland law, however, provides an administrative remedy with the Maryland Commission on Civil Rights—not a private cause of action—for allegations of discrimination in places of public accommodation. *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 407-08 (D. Md. 2022); *Gandy*, No. CV GLR-20-3436, 2021 WL 3911892, at *10. The plaintiffs do not purport to have exhausted, or even pursued, that remedy. Thus, the motions to dismiss Count X will be granted.

### B.  Title VI and Title IX

Moving to the plaintiffs' federal statutory claims, the complaint asserts that both defendants violated their rights under Title VI and Title IX, though the plaintiffs now agree to voluntarily dismiss the claims against Marsh. Title VI bans programs receiving federal funds from discriminating on the basis of race; Title IX prohibits educational institutions receiving federal funds from discriminating on the basis of sex. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). A school board violates these statues when it has actual knowledge of discrimination, authority to implement corrective measures to address the discrimination, and yet responds to the discrimination with deliberate indifference. *Baynard v. Malone*, 268 F.3d 228, 237

(4th Cir. 2001). The deliberate indifference standard is satisfied where the response is "clearly unreasonable." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999).

The Board's sole defense to the Title VI and Title IX claims is that the complaint does not sufficiently allege actual notice. The court disagrees. As the court has already explained, the complaint alleges that the Board's agents witnessed Marsh's conduct, that the Board received complaints about Marsh's behavior from concerned parents and school officials, and that, ultimately, in 2018 the Board received a complaint that Marsh had a sexual relationship with a student who is not a party to this suit. Despite all this, the plaintiffs allege, the Board responded with inaction. Marsh then proceeded to develop sexual relationships with the student-plaintiffs, singling them out because they were black men. Accepting these facts as true, the plaintiffs have stated Title VI and Title IX claims against the Board.

With the plaintiffs' consent, the court will grant Marsh's motion to dismiss the Title VI and Title IX claims in Counts XIV and XV. It will deny the Board's motion to dismiss the same claims.

### C.  § 1981

Next, the plaintiffs lodge a claim under 42 U.S.C. § 1981. Section 1981 guarantees equal rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. "To state a claim premised upon 42 U.S.C. § 1981, a plaintiff must show three elements: '(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 394 (D. Md. 2011) (quoting

*Baltimore–Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 699 (D. Md. 2003)). Although the plaintiffs have alleged membership in a racial minority group and intentional discrimination generally, they have failed to provide a clear statement alleging discrimination related to a right protected by § 1981 specifically. The defendants' motions to dismiss Count XVII will thus be granted.

### D.  § 1982

The complaint also contains a claim under 42 U.S.C. § 1982. Section 1982 secures equal rights to "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under § 1982, a plaintiff must allege "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property." *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 541-42 (D. Md. 2020) (quoting *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004)). There is no dispute that the plaintiffs here have sufficiently alleged membership in a protected class and intentional discrimination. The parties do, however, contest whether the property interest in education is the kind of property right § 1982 protects. The court need not resolve that question at this stage: The court has already permitted similar claims to advance, and the § 1982 claim is unlikely to expand the scope of discovery. Thus, at this time, the court will deny without prejudice the defendants' motions on Count XVIII.

### E.  § 1986

The plaintiffs' final statutory claim arises under 42 U.S.C. § 1986. The defendants each move to dismiss this claim, and the plaintiffs now agree to voluntarily dismiss it without prejudice. The court will therefore grant the defendants' motions to dismiss Count XIX.

To summarize the court's holdings on the statutory claims, Marsh's motion to dismiss will

14

be granted as to Counts X, XIV, XV, XVII, and XIX and denied as to Count XVIII. The Board's motion to dismiss will be granted as to Counts X, XVII, and XIX and denied as to Counts XIV, XV, and XVIII.

### III. Constitutional Claims

Finally, the plaintiffs bring various claims under the Maryland and U.S. constitutions. They allege that both Marsh and the Board violated their rights under (A) Article VIII of the Maryland Constitution; (B) Articles 24 and 26 of the Maryland Declaration of Rights; and (C) the Fourteenth Amendment to the U.S. Constitution. The court concludes with an analysis of each constitutional claim below.

#### A.  Article VIII

The plaintiffs' first constitutional claim arises under Article VIII of the Maryland constitution. Article VIII directs the General Assembly to "establish throughout the State a thorough and efficient System of Free Public Schools." Md. Const. art. VIII, § 1. Like the plaintiffs' claim under 42 U.S.C. § 1982, the parties dispute whether Article VIII confers a private right of action. And as with that claim, the court need not resolve the question at this stage: the court will permit discovery on the Article VIII claim, which is unlikely to expand the scope of discovery beyond the plaintiffs' other related claims, and for now deny without prejudice the motions to dismiss Count XI.

#### B.  Articles 24 & 26

The plaintiffs bring their remaining state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights. Article 24 is the Maryland Constitution's guarantor of equal protection and due process of law. *See, e.g.*, *Taylor v. Go-Getters, Inc.*, 20-cv-3624, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021). Although the provision's text "contains no express Equal

15

Protection Clause," under Maryland law it is "settled" that the "concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights." *Town of Easton v. Pub. Serv. Comm'n of Md.*, 838 A.2d 1225, 1237 n.11 (Md. 2003) (quoting *Attorney General v. Waldron*, 426 A.2d 929, 940-41 (Md. 1981)). Thus, as a substantive matter, Article 24 is interpreted coextensively with the Fourteenth Amendment to the U.S. Constitution. *Taylor*, 2021 WL 5840956, at *16. Article 26, meanwhile, is Maryland's analog to the Fourth Amendment to the U.S. Constitution. Just as Article 24 is interpreted in line with the Fourteenth Amendment, Article 26's protections are equivalent to the Fourth Amendment's. *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 504 (D. Md. 2014).

In Marsh's view, the plaintiffs' equal protection and due process claims fall outside the ambit of Articles 24 and 26 because the sexual misconduct occurred off school premises and outside school hours, and thus arises from Marsh's conduct in her personal capacity—not in the official capacity required for constitutional redress. The complaint does not allege when or where the sexual misconduct took place, however, and at this stage the court cannot take Marsh's word for it. Moreover, even if the sexual encounters themselves took place off campus, the complaint accuses Marsh of using her role as school nurse to select young black men as potential sexual partners to furnish her with a "black baby," and then grooming them over a year-long period through extensive on-campus and on-duty solicitation. This connection between on-campus grooming behavior and off-campus sexual exploitation may be sufficient to support Article 24 and 26 claims wherever the eventual sexual encounters themselves took place. *See Wicomico Cnty. Dep't of Soc. Servs. v. B.A.*, 141 A.3d 208, 220 (Md. 2016). Marsh's motion to dismiss Counts VII and VIII will therefore be denied.

16

The Board, for its part, suggests it cannot be held vicariously liable for Marsh's alleged Article 24 and 26 violations for two reasons. First, it characterizes the plaintiffs' allegations as "pattern or practice" claims which, in its view, Maryland law does not permit against state boards of education. Second, it contends Marsh acted outside the scope of her employment when she violated the plaintiffs' rights and thus it is not responsible for her actions under the doctrine of respondeat superior. The court rejects both arguments.

In *Prince George's County v. Longtin*, 19 A.3d 859, 886 (Md. 2011), Maryland's high court addressed so-called "pattern or practice" claims. Such claims are a creature of federal law designed to satisfy the U.S. Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) holding that local government entities cannot be sued under § 1983 on a theory of respondeat superior, but instead only for constitutional deprivations effected under an "official municipal policy," including a pattern or practice of misbehavior. Under Maryland law, however, local governments *are* vicariously liable for the tortious conduct of their employees because "Maryland's constitution requires more of its municipalities." *Longtin*, 19 A.3d at 884-85. They are thus equally liable for pattern or practice claims because such claims are "merely a more egregious subset of the actions that are prohibited by Maryland constitutional law." *Id.* at 886.

There is no basis (aside, perhaps, from sovereign immunity which the Board has not raised) for concluding that Maryland's blessing of vicarious liability and pattern or practice claims against municipal agencies simultaneously forbids the same claims against state agencies, and the Board has offered no authority for that proposition. Absent such authority, vicarious liability claims against state agencies are simply subject to the "interplay between respondeat superior and" the Maryland State Tort Claims Act. *See DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999) (emphasis

omitted). The court has already concluded that the Board may be liable in respondeat superior for Marsh's negligence on a theory of ratification, so the same is true of its vicarious liability for her state constitutional torts. The Board's motion to dismiss Counts VII and VIII will be denied.

### C. Fourteenth Amendment

Last, the plaintiffs claim the defendants violated their rights under the Fourteenth Amendment to the U.S. Constitution. The Fourteenth Amendment does not contain an independent cause of action but is instead enforceable by private plaintiffs under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any "*person* who," acting "*under color of*" *state law*, deprives another of their constitutional rights. *See* 42 U.S.C. § 1983 (emphasis added). Marsh and the Board each raise statutory objections to the plaintiffs' claim: Marsh says she was not acting under color of law when she engaged in misconduct; the Board says it is not a "person" for purposes of § 1983.

The court has already rejected Marsh's argument that the plaintiffs' claims pertain only to her conduct outside the scope of employment. It rejects her defense that she was not acting under color of state law for the same reason. *See Wicomico Cnty. Dep't of Soc. Servs.*, 141 A.3d at 220 ("grooming behavior in class could, in conjunction with sexually exploitative conduct outside of class, support a finding" that sexual misconduct took place within the scope of employment); *see also Monroe v. Pape*, 365 U.S. 167, 183 (1961) (a state official violating state law in the line of duty acts under color of state law for purposes of individual capacity § 1983 suits). Marsh's motion as to Count XVI will be denied.

As for the Board, however, the court agrees the Fourteenth Amendment claim must be dismissed on statutory grounds. As just explained, § 1983 provides a cause of action only against

18

"persons." "Maryland Courts have clearly established" that a county education board "is not a 'person,' but instead is a state agency, and therefore is not subject to any liability under 42 U.S.C. § 1983." *Hanifee v. Bd. of Educ. of Kent Cnty.*, No. 09-cv-2381, 2010 WL 723772, at *6 (D. Md. Feb. 24, 2010). On that basis, the Board's motion to dismiss Count XVI will be granted.

To sum up the constitutional claims, then, Marsh's motion to dismiss will be denied as to Counts VII, VIII, XI, and XVI. The Board's motion to dismiss will be granted as to Count XI and denied as to Counts VII, VIII, and XI.

## CONCLUSION

For the reasons discussed above, the court will deny without prejudice Marsh's motion for summary judgment and grant in part and deny in part both defendants' motions to dismiss. Specifically, Marsh's motion to dismiss the claims against her under common law respondeat superior (Count XIII); § 20-901 (Count X); Title VI (Count XIV); Title IX (Count XV); § 1981 (Count XVII); and § 1986 (Count XIX) will be granted, her motion to dismiss the claims under common law negligence and gross negligence (Counts III and IX); common law battery (Count IV); common law invasion of privacy (Count V); common law fiduciary duty (Count XII); Articles 24 and 26 of the Maryland Declaration of Rights (Counts VII and VIII); and the Fourteenth Amendment (Count XVI) will be denied, and her motion to dismiss the claims under Article VIII of the Maryland Constitution (Count XI) and § 1982 (Count XVIII) will be denied without prejudice. With respect to the Board, its motion to dismiss the claims against it under common law respondeat superior (Count XIII); § 20-901 (Count X); § 1981 (Count XVII); § 1986 (Count XIX); and the Fourteenth Amendment (Count XVI) will be granted, its motions to dismiss the claims under common law negligence and gross negligence (Counts I, II, and IX); common law fiduciary duty (Count XII); Articles 24 and 26 of the Maryland Declaration of Rights (Counts VII and VIII);

Title VI (Count XIV); and Title IX (Count XV) will be denied, and its motion to dismiss the claims under Article VIII of the Maryland Constitution (Count XI) and § 1982 (Count XVIII) will be denied without prejudice.

A separate order follows.


____1/24/2023_____                              _____/s/_____
Date                                               Richard D. Bennett
                                                   United States District Judge

20